# Barnard v. Davis et al.

*Bill in Equity to set aside Fraudulent Conveyances, and for Injunction, &c.*

1. *Affidavits; when admissible to contradict denials of answer.*—Where the answer clearly and explicitly denies the plaintiff's title—the right in him which is the foundation of the relief prayed—*ex parte* affidavits should not be received to overturn or contradict the denials in the answer.　Within this limitation, affidavits may be received, against the denials and averments of the answer, in cases of waste, (including analogous cases resting on like principles,) nuisance, infringement of patent rights, and in cases to dissolve and settle partnerships and other joint adventures, where extreme mismanagement is charged against the defendant partner or joint adventurer; and in all cases where complainant can introduce affidavits, the defendant may introduce counter affidavits.

2. *Injunctions issued under § 3428 Revised Code; affidavits not admissible on motion to dissolve.*—On the dissolution of an injunction obtained under section 3428 of the Revised Code, the complainant is required to give bond, under § 3437 of the Revised Code, to refund the money if the judgment be perpetually enjoined; hence the injury from the dissolution is not irreparable, and affidavits can not be heard.

3. *Sections 3428 and 3437 of Revised Code; to what cases do not apply.*—Sections 3428 and 3437 of the Revised Code, were intended to meet the wants of defendants in judgments, who seek to relieve themselves of payment by force of some defense of equitable cognizance; they have no application where the judgment debtor seeks no relief against it, but a third party claiming that the judgment is really the property of one to whose rights he succeeds, seeks to enjoin the plaintiff in the judgment from collecting it, and to have it applied to the benefit of such claimant.

4. *Fraud; what facts not conclusive proof of.*—Contracts by which a father, largely indebted, and who soon after becomes insolvent, parts with very valuable interests to his son, at or before the latter attains to lawful age, should at least invite the watchful scrutiny of courts.　They are not necessarily fraudulent, and may be explained consistently with fair dealing and good faith.

5. *State court of chancery, jurisdiction of.*—A chancery court of this State has jurisdiction to entertain a bill by an assignee in bankruptcy, to assail and set aside transfers of property made by the bankrupt, in fraud of the common and statute law of this State.

[Barnard v. Davis et al.]

6. *Safe keeping of fund pending litigation, proper order for.*—Where a claim belonging to a bankrupt has been fraudulently transferred to another, who has obtained judgment and is about to coerce satisfaction on execution against the debtor, the court, on bill by the assignee in bankruptcy assailing the transfer, should not enjoin the collection, but ought to restrain the transferee from interfering or receiving the money, and direct the officer levying the execution to make the money thereon, and pay it over to the register. If the circumstances of the case require nothing more than the collection and safe keeping of the fund to await the final disposition of the cause, it is unnecessary to appoint a special receiver to hold the fund.

APPEAL from Chancery Court of Madison.

Heard before Hon. H. C. SPEAKE.

This is an appeal under section 3439 of the Revised Code, from an order of the chancellor dissolving a preliminary injunction, granted in the cause on filing the amended bill, upon the denials in the answers of the respondents.

The original bill, which was afterwards amended, was filed on the 28th of February, 1874, by the appellant, Henry Barnard, as assignee in bankruptcy of Zebulon P. Davis, against said Zebulon P., Williametta, his wife, and their son, G. L. Davis, and others. It is charged in the original and amended bill that Zebulon P. Davis was duly adjudged a bankrupt on his own petition, on the 7th day of March, 1872, and that Barnard was duly appointed his assignee in bankruptcy, and an assignment duly made to him by the register of all the estate of the bankrupt.

It is further alleged, that on the 16th day of October, 1860, judgment was recovered in the circuit court of Limestone county, by Charles and Thomas S. McCalley, against said Zebulon P. Davis for three thousand and thirty-six dollars, on which various writs of *fieri facias* were issued at certain times, which were specified, between the date of its recovery and the 21st day of July, 1869. Under a *pluries fieri facias* issued on the last named day, delivered to the sheriff of Madison county, a levy was made on the house and lot in Madison county occupied by said Zebulon P., under which it was sold by the sheriff to said Williametta for the sum of thirty-five hundred dollars; that there is no deed of record in the probate court conveying said property to said Williametta; that at the time of the levy and sale said George L. Davis claimed to be the owner of the judgment, and by the receipt of the sheriff appears to have received the money therefor. It was also alleged, that in a suit in the circuit court of Madison upon a bond executed by M. J. Donegan and Tim Murphy, on the 17th day of January, 1862, and payable one year thereafter to John Reed, deceased, which once belonged to Zebulon P. Davis, who transferred it to George L. Davis, said George L. had obtained judgment

against said Murphy and Donegan for the sum of three hundred and seventy-six dollars and twelve cents; that execution issued on this judgment had been levied on a house and lot in Huntsville, the property of Donegan, and that, unless restrained, the sheriff would proceed to sell the same to satisfy said execution.   The bill also alleged, that said George L. instituted suits and recovered judgments against Doyle, Spragins and Stevens, on a note made by them in favor of said Zebulon P. Davis, and by him transferred to the said George L.; that he had also recovered judgment against Beirne, administrator of C. H. Patton, for $190 besides costs, upon a bond executed by said Patton in favor of said Zebulon P. Davis.

It was further alleged, that said George L. claimed of McClellan, as administrator of an insolvent estate of one Smith, five thousand dollars upon notes made by said Smith to Zebulon P. and L. R. Davis, said G. L. Davis claiming to be the assignee of said Zebulon P. Davis' interest therein. The bill alleges that said Zebulon P. has been insolvent since the late war, and in fact owned the judgment under which his house was sold; that his wife, Williametta, was without means to purchase at said sheriff's sale; that said Zebulon P., being insolvent, transferred the said notes and bonds to said George L. without valuable consideration, for the purpose of hindering, delaying and defrauding creditors; that George L. Davis, at the time of the transfer of said McCalley judgment against said Zebulon P., "was a very young man, scarcely, if in fact, beyond his majority, and that he had not the means with which to negotiate a *bona fide* transaction of that magnitude;" neither did he have means to purchase the said notes and claims transferred to him, but that the same was a fraudulent contrivance between them to conceal his interest therein, for the purpose of hindering, delaying and defrauding creditors.

The bill prayed, among other things, that the said Williametta be compelled to convey the house and lot purchased by her, under the McCalley judgment, to be administered by the complainant as assignee in bankruptcy; that the sheriff and said George L. Davis be enjoined from collecting the judgment in favor of said George L. against Donegan and Murphy, also for relief as to other matters, which need not be here specially noticed.   The bill was sworn to by the complainant, and waived the answer on oath of the defendants Zebulon P., Williametta and George L. Davis.

When the original bill was filed, the proceedings in the suit against Murphy and Donegan had not ripened into judgment, and the facts as to the levy upon the property of Donegan

were introduced by amendment, which was allowed August 30th, 1875, upon affidavit of Barnard as to the truth of the facts stated.   In the amendment, an injunction was specially prayed against the sheriff and said George L. from taking any steps to collect the money on said execution.

The chancellor directed an injunction to issue, as prayed in the amended bill, upon complainant entering into bond in double the amount of the judgment, with good and approved securities, payable, conditioned and approved as required by law."

On the 31st day of May, 1875, Zebulon P. Davis filed an answer, and on the same day Williametta and George L. Davis adopted his answer as theirs.   Afterwards, on the 29th day of January, George L. Davis filed an amended answer, which was under oath.   This answer was in substance as follows:   He was born on the 31st day of August, 1845.   In the fall or winter of the year 1862, by agreement between himself and father, he was emancipated and taken into business as the equal partner of his father, in the business of buying and selling salt, cotton, whisky, tobacco, osnaburgs, leather and other articles, and this business, though occasionally interrupted, continued until the summer of 1865. The share of the said George L. in the profits amounted to about six thousand dollars, and no books having been kept, because of the war then raging, said George L. could not state the amount with exactness; that in the years 1864 and 1865, he realized the sum of fifteen hundred dollars from keeping billiard tables in Huntsville, Alabama.   Said Zebulon P. Davis never claimed the son's share of the partnership profits, nor his receipts from the billiard tables, but spent them with the understanding that he was to repay them to his son, and in the spring of 1866 was indebted to his son, George L., for about six thousand dollars.   It was in part payment of this indebtedness that Zebulon P. transferred to his son the bond on which he recovered judgment in the Donegan and Murphy suit, and the other choses in action, of the transfer of which complaint is made.   It is further stated in this answer, that in the spring of 1866 George L. Davis learned that McCalley had recovered a judgment against said Zebulon P. and L. R. Davis, and execution had been levied on said Zebulon's house.   At this time, the answer states, George L. had $1,300 of his own money in bank, and he desired to save his father's home.   He therefore bought up a claim, from Price, Farriss & Co., against McCalley & Co., for which he paid their attorney $393.75, and at the next term of court recovered judgment thereon against them for $684.50, and sued out garnishment against

his father as their debtor. Afterwards, in September, 1866, George L. succeeded in buying from McCalley & Co. their judgment against Zebulon P. in consideration of the surrender of the judgment against them and payment of $870 in cash—making the judgment cost him, said George L., the sum of $1,263.75—and for this consideration the judgment against Zebulon P. was transferred to him, taking the following receipt :

"Received, Huntsville, Alabama, of Zeb. P. Davis, by the hands of George L. Davis, eight hundred and seventy dollars in federal bank notes, which amount is in full for an execution or judgment against Zeb. P. Davis in Limestone county, Alabama, in our favor. Judgment rendered October 16th, 1860, which judgment we transfer to said George L. Davis, he paying all court costs that may have accrued on said debt or judgment to this date.        THOS. S. McCALLEY & Co."

The answer states that Zebulon P. had no interest in the money thus paid, and the recital showing payment by Zeb. P., is a mistake, said George L. having no attorney to draw the papers, and that the money was really paid by him and the judgment transferred to him, as shown by the language transferring the judgment to said George L.

The answer further states circumstances and facts going to show that this money was drawn by him out of the Huntsville National Bank, and makes exhibits of certain checks drawn about that time, payable to himself, amounting together to $906.25.

After the purchase of the McCalley judgment, George L. caused the home of Zebulon P. to be sold under execution issued on it, his mother becoming the purchaser; he receipting to the sheriff for the amount bid.

It is impossible to set out in detail all the facts and circumstances set up in the bill and shown in the answers, bearing upon the good faith of the various transactions assailed by the bill, without swelling the report of the case to an improper length.

After the allowance of the amendment, said Williametta and Zebulon P. put in sworn answers, which stated the transactions mentioned, substantially as shown in the answer of George L.

After the coming in of the answers, but at what date is not shown, respondents moved to dissolve the injunction, but upon what ground is not shown, the motion not being set out in the transcript. The matter was submitted for decree in vacation, and on the 10th day of April, 1876, the chancellor made an order dissolving the injunction, on the ground that the answers fully met and denied the material allegations

of the bill. It is stated in the decretal order, that complainant "offered in evidence certain affidavits and exhibits, marked 'filed March 15th, 1876;' but the same being considered by the chancellor, their admission as evidence on this motion is dissolved." This decree also required that before said George L. proceeded to collect the Donegan and Murphy judgment, he should execute bond as required by section 3437 of the Revised Code.

The affidavits offered on the hearing were those of two of the solicitors for the complainant, who were "witnesses for the complainant in the cause, to whom interrogatories have been propounded and filed, with whom affiants have had conversations, and in such conversations these witnesses have stated, of their own knowledge, facts and circumstances confirmatory of the material averments of complainant's bill, and facts and circumstances contradictory of and in conflict with the material denials and averments of the answer. Affiants further state that they will produce, on the hearing of the cause, record evidence directly contradictory of sworn statements in the answer and deposition of Z. P. Davis in this cause. Affiants accompany with this affidavit a copy of said Z. P. Davis' deposition in this cause."

The decree rendered, and the refusal to consider the affidavits, are now assigned, among other things, for error.

BEIRNE, HUMES & GORDON, for appellant.—The court erred in refusing to receive the affidavits, under the circumstances shown by this record.—*Grandin v. LeRoy*, 2 Paige, 509; 1 Clarke's Ch. 347; Hilliard on Injunctions, § 74; 1 Overton, 121; *Poor v. Carleton*, 3 Sumner, 70–83; 64 N. C. 451; 2 Pa. 342; 1 Woodbury & Minot, 13; 16 Vesey, jr. 49; 2 Leading Cases in Equity, p. 207. What is said in *Long v. Brown*, 4 Ala., is a *dictum*.

II. The facts show a case of irreparable injury, and the injunction should have been retained.—17 Ala. 667; 28 Ala. 289; 62 Ga. 5; 9 Johns. Ch. 202.

III. The chancery court had full jurisdiction.—105 Mass. 136; 29 Ala. 112; *Ward v. Jenkins*, 10 Met. 583; 69 N. C. 404; Bump on Bankruptcy, (7 ed.) 473 *et seq*. The conveyances complained of were in fraud both of the statute and common law, and there can be no doubt of the jurisdiction of the State court in such a case.—55 N. G. 159; 7 Bush, (Ky.) 66; 50 Ala. 265; 44 Ala. 333. *Ex parte* Gist, 26 Ala. 165; 48 Miss. 101. See, also, *Otis v. Hadley*, 112 Mass. 100.

PAUL JONES, LIONEL DAY, NICHOLAS DAVIS, and WALKER & SHELBY, *contra*.—A cause will be dismissed at any stage of

[Barnard v. Davis et al.]

proceedings for want of jurisdiction, apparent on the face of the proceedings.—41 Ala. 75; 46 Ala. 72; 42 Ala. 153; 3 Met. (Ky.) 77; 4 Green, (Iowa,) 376.

A State court has not jurisdiction of a bill filed by an assignee in bankruptcy against the bankrupt and others after his final discharge, seeking to obtain property alleged to be the estate of the bankrupt, because "upon the filing of a voluntary petition in bankruptcy, (no other court having first obtained jurisdiction of the bankrupt or his estate,) the court of bankruptcy acquires full and *exclusive* jurisdiction of the bankrupt and his estate."—*Steel v. Moody,* Head-notes, January term, 1876, p. 12; *Voorhees v. Frisbie,* 25 Mich. 476; same case, 12 Am. Rep. 29; *In re Cent. Bank Brooklyn,* 7 C. L. N. 371; *Walker, assig. v. Seigell,* 2 Cent. L. L. 503; *Stewart v. Hines,* 11 Met. B. R. 87; *Oates v. Parish,* 47 Ala. 157; *Van Nostrand v. Carr,* 30 Md.; *Corey v. Ripley,* 57 Maine, 69; *Burbee v. Sparhawk,* 108 Mass. 111; same case, 11 Am. Rep. 320; 7 National B. R. 490; *Bingham v. Caflin,* 7 Bank. Reg. 412.

But if the court should refuse to dismiss the cause for want of jurisdiction, we cite the following authorities to show that the injunction was properly dissolved.—*Sanders v. Cavett,* 38 Ala. 51; *Brooks v. Deas & Co.* 35 Ala. 599; *Dunlap v. Clements,* 7 Ala. 539; *Mobile School Comm. v. Putnam,* 44 Ala. 606, (4th point); and as to emancipation of child by parent, see *McClosky v. Syppert,* 27 Penn. 230; Reeves' Domestic Relations, 432, (note); 11 Humphrey, 104; 7 Cowan, 85–92.

The affidavits were properly rejected by the chancellor.— *Long & Long v. Brown,* 4 Ala. 622.

The motion to dissolve injunction was made March 6th, 1876.

STONE, J.—In *Poor v. Carleton,* 3 Sumner, 79, Mr. Justice Story lays down a rule for the admission of affidavits on a motion to dissolve an injunction on the denials of the answer, which is rather broader in some of its terms than the current of authorities will warrant. To leave it purely a matter of discretion with the chancellor whether or not he will hear *ex parte* affidavits in every case tried before him, is to declare no rule at all. The tendency of such practice would be to invite the experiment in every case where the practitioner thought he could strengthen his case by such affidavits. A question so important in practice, and of such frequent presentation, should, if possible, have a solution which will tend to uniformity of administration. Still, we find it difficult to express a rule which will infallibly inform the

practitioner when he may or may not introduce such affidavits.

In the case of *Long & Long v. Brown*, 4 Ala. 631–2, this court said: "On a motion to dissolve an injunction, affidavits cannot be received, either to support or contradict the answer, with the single exception of *waste*, where the injury would be irreparable."

That great equity judge, Chancellor Kent, after stating that the general rule is against their admission, and that the instances in which they are admitted are exceptional, adds: "They have been admitted in cases of waste, and in cases analogous resting on the 'same principle, and where irreparable mischief might ensue; and (he adds) I am aware that partnership cases have been brought within this rule." *Eastburn v. Kirk*, 1 Johns. Ch. 445.

The case of *Strathmore v. Bowes*, 2 Bro. C. C. 88, referred to by Chancellor Kent in the case *supra*, was one of waste. In a note to that case, it is said that "upon applications to continue or dissolve injunctions to stay waste, or acts in the nature of waste, though the court does not permit affidavits to be read in support of the plaintiff's equity, yet, when the waste sworn to is denied, proof of it by affidavit will be admitted.　　.　　.　　Upon similar principles the court has permitted the reading of affidavits in a case of partnership, though with great caution, and only when it has clearly appeared that one partner, by acts of extreme misconduct, is bringing the case within the principle of irreparable mischief. But this has been confined to affidavits in support of the allegations of mismanagement, &c., not in support of the title."

In the case of *Poor v. Carleton*, *supra*, Mr. Justice Story, speaking of the admissibility of the affidavits offered, says "that they are admissible I cannot doubt, for they are merely to collateral matters, not touched by or contradictory to the answers.　　.　　:　　.　　Without doubt the defendants are at liberty to repel such affidavits by counter affidavits to the same points, for otherwise they might be compromitted by statements which they would have no opportunity to answer." It is further said, in the same opinion, that "there is another qualification of the doctrine, in cases of irreparable mischief, and that is, that though the original affidavits may be read as to other facts contradicted by the answer, they cannot be read in support of the title of the plaintiff, which is contradicted by the answer." Mr. Story expresses his disapprobation of this last proposition, but we do not concur with him in that.

In High on Injunctions, § 1005, it is said: "Upon a mo-

tion to dissolve, on the coming in of the answer, complainant will not usually be allowed to file additional affidavits, either in support of his bill, or for the purpose of contradicting the answer. Some exceptions to the rule are, however, recognized by the authorities, and where the effect of a dissolution would be that the parties would not remain in *statu quo* upon the final hearing, and when, as in cases of waste, serious and irreparable mischief would ensue from the delay, the strictness of the rule may be relaxed."

We hold that where the answer clearly and explicitly denies the plaintiff's title, the right in him, which is the foundation of the relief he prays, then *ex parte* affidavits should not be received to contradict or overturn such denials in the answer. With this limitation, affidavits are receivable against the denials and averments of the answer, in cases of waste, of nuisance, of infringement of patent rights, and in cases to dissolve and settle partnerships and other joint adventures, where extreme mismanagement is charged against the defendant partner or joint adventurer. Under the general designation, waste, we include all analagous cases resting on like principle. And, we may add, in all cases where, under these rules, the complainant is entitled to introduce affidavits, the defendant may introduce counter affidavits. We do not declare these rules as controlling absolutely all cases that may arise, but as declaration of principles for the solution of questions that may be presented. They somewhat enlarge the rule declared in the dictum found in *Long v. Brown, supra.*

Under the rules above declared, the case made by the pleadings in this cause is not one of irreparable mischief, or one in which affidavits contradictory of the answer should have been received.

When an injunction obtained under section 3428 of the Revised Code is dissolved, the complainant is required to give a refunding bond under section 3437 Revised Code. The mischief resulting from such dissolution cannot be irreparable, and therefore affidavits should not be allowed on motions to dissolve injunctions obtained under that section.

The present amended bill and injunction do not fall within the provisions of sections 3428 and 3437 of the Revised Code. Those sections are intended and framed to meet the wants of defendants in judgments, who seek to relieve themselves from the payment thereof by force of some defense of equitable cognizance. Success in such a suit, is a discharge of the supposed debt or recovery evidenced by the judgment. Hence, a refunding bond, " conditioned to refund the money and interest, he (the plaintiff,) may collect on the judgment,

if the same is on the final hearing of the bill perpetually enjoined," would, in such case, be apt and ample security.

In this case, such bond would be no proper security. A perpetual injunction in this cause will not relieve the defendants in the judgment from paying it, nor give them any right to recover it back. It will only settle that Barnard and not Davis is entitled to the money.

In *Rembert & Hale v. Brown*, 17 Ala. 671, this court said: "An injunction will not always be dissolved, even if the answer deny the equity of the bill, if the court can see good reason in the facts disclosed why the injunction should be retained. If the answer be evasive or uncertain, or if the case made by the answer does not clearly show that the complainant is not entitled to relief, the injunction should be retained until the final hearing." The same principle had been asserted in *Poor v. Carleton, supra.*

In *Roberts v. Anderson*, 2 Johns. Ch. 204, a judgment had been recovered in an action of ejectment. The defendant in ejectment being adjudged to be in possession as tenant to lessors of plaintiffs, had precluded himself from defending the action at law, and the complainants in the chancery suit, claiming that they had title to the premises, had filed their bill to enjoin said judgment at law, on the ground of fraud in the title under which the lessors of the plaintiff had recovered. The chancellor said: "Both parties deduce title to the premises in controversy from William Griffith, and the only point is, whether the two deeds from Griffith to Sarah Johnson, under whom the defendants set up title, were fraudulent and void. This question of fraud was not tried, and from the history of the ejectment suit, as stated in the pleadings, it would seem that it could not be tried, as the recovery was placed entirely on the ground that the defendant at law was tenant to the new defendants, and so concluded from setting up this defense. But the fraud, as charged, is a proper and familiar head of equity jurisdiction, and unless the answer be full and satisfactory, the injunction, if right in the first instance, ought to be retained until the hearing.          It appears to me, then, that until the cause is brought to a hearing, and decided on the merits, the possession ought not to be changed, and that the case does not fall within the reason of the general rule, that an injunction is to be dissolved when an answer comes in and denies all the equity of the bill.          The granting and continuing of the process must always rest in sound discretion, to be governed by the nature of the case." See, also, the case of *Moore v. Hylton*, 1 Dev. Eq. 435.

Contracts by which a father, largely indebted, and who

soon afterwards becomes insolvent, parts with very valuable interests to his son, at or before the time the latter attains to lawful age, should at least invite the watchful scrutiny of courts. They are not necessarily fraudulent, but may be explained consistently with good faith and fair dealings.

In *Young v. Dumas*, 39 Ala. 60, which was a contract between near relations, we said: "The relationship of Mr. Dumas to Mr. Horn, and the gift of the entire property by Mr. Horn to his daughter, Mrs. Dumas, while they should stimulate our scrutiny of the transaction, are not enough of themselves to mark the conveyance as fraudulent. Mr. Horn had the clear right to collect his demand, which we have seen was just, from his son-in-law, Mr. Dumas, and after he thus became the owner of the property, his right to give that property to the sole and exclusive use of his daughter, Mrs. Dumas, cannot be successfully controverted by the creditors of Mr. Dumas."

So, in this case, the transaction should be scrutinized, not with a foregone conviction that there was intent to defraud, but with a watchful purpose to know, if possible, the entire transaction. If, when the testimony comes in, the transaction be satisfactorily explained; if it be clearly shown that the father was, in good faith, indebted to the son as claimed, and in payment of that debt paid to him the claims in controversy in like good faith, then the appellee should enjoy the fruits of such payment. So, if there be satisfactory account of how George L. Davis acquired the money—$1,263— with which he purchased the homestead of the family, then his right to give it to his mother is clear and unquestioned.

We think the answers in this cause do not clearly show that the complainant is not entitled to relief. We forbear to specify, further than we have done above, the reasons which lead our minds to this conclusion, lest we might thereby inflict an undeserved injury on the defendants. We quote and adopt the language of Judge Gaston, expressed on a similar application, that "it is not for us to anticipate how these matters shall appear, when the cause shall be brought to a hearing, and we are reluctant to express any opinion which may prejudice the case of the defendants."—*Sherrill v. Harrell*, 1 Ire. Eq. 195.

There is nothing in the objection that the chancery court of Madison county has not jurisdiction of this cause. The assignee is clothed with the rights of property of the bankrupt, with the additional right to assail and set aside fraudulent transfers of property made by the bankrupt. On the latter point he is armed with the power and rights of the creditors. If, then, the transfers complained of be obnox-

ious to the charge of fraud, the chancery court has full power to set them aside, that the assignee may apply the assets to the proper debts of the bankrupt.—Bump on Bankruptcy, 6th Ed. 198, *et seq*; Bankrupt Act, section 16. The fraud charged in the present bill, if sustained, is a fraud on the common and statute law of the State of Alabama. Such questions are clearly cognizable before the proper State tribunals.—*Ward v. Jenkins*, 10 Metc. Mass. 583; *Boone v. Hall*, 7 Bush. 66; S. C. 3 Am. Rep. 288; *Cogdell v. Exum*, 59 N. C. 464; S. C. 12 Am. Rep. 657; *Kemmerer v. Tool*, 12 B. R. 334; *Jordan v. Downey*, 12 B. R. 427.

The chancery court of Madison should not have enjoined the collection of the judgment against Murphy and Donegan without more. There should have been provision made for its collection and safe custody until the final disposition of the cause. Ordinarily this is done through a receiver. But inasmuch as there is, in this case, but one act to be done, namely, the collection and safe-keeping of said fund, it would be both expensive and unnecessary to appoint an independent receiver for this simple duty. The register of the court, in his official capacity, is a proper person to receive said money and hold it in the registry of the court, to abide the further order of the court to be made in this cause.

The decree of the chancellor, dissolving the injunction, is reversed, and this court, proceeding to render the decree which the chancellor should have rendered, doth order and decree that said George L. Davis be, and he hereby is, enjoined and restrained from controlling, collecting or receiving the proceeds of said judgment against Murphy and Donegan, described in the pleadings, until further order of the chancery court. And the said sheriff of Madison county is directed to collect said execution, and pay it into the registry of the chancery court, taking the register's receipt therefor; said money to abide the further order of the said chancery court, to be made in the premises.

Reversed and rendered.

BRICKELL, C. J., not sitting.