# Donegan *v.* Davis.

*Bill in Equity by Asssignee in Bankruptcy, to set aside Fraudulent Conveyances by Bankrupt.*

1. *Chancellor's decree on evidence; revision of, on appeal.*—On appeal from a decree in chancery, rendered on the pleadings and evidence as to a disputed question of fact, the appellate court will affirm the decree, "unless clearly convinced that it is wrong."

2. *When assignee in bankruptcy may sue, without proof of debts.*—When an assignee in bankruptcy files a bill in equity to set aside, on the ground of fraud, conveyances of his property by the bankrupt, it is not necessary for him to show that debts have been proved against the bankrupt's estate; though, if it were affirmatively shown that there were no debts proved or provable, "that would, possibly, be an answer to the suit."

3. *Earnings of infant.*—The earnings of a child, during his minority, belong to his father, and may be subjected by creditors to the payment of the father's debts, unless he had been previously emancipated by the father.

4. *Same; emancipation.*—Emancipation *vel non* is, at most, a question of fact, to be determined by the circumstances in evidence: it is not necessary, in every case, to show an abandonment of home by the infant, or a disruption of family ties; it is sufficient, as in this case, to show that he supported himself, and paid for his board at home, his father being insolvent.

[Donegan v. Davis.]

5.   *Transfer of choses in action by insolvent debtor to his son, in consideration of alleged indebtedness accrued during infancy, held fraudulent and void as against creditors.*—A transfer and assignment by an insolvent debtor to his son, who had just attained his majority, of certain notes given for the purchase-money of land, and other *choses* in action, in consideration of an alleged indebtedness of more than $5,000, on account of partnership transactions during the late war, when they were engaged in buying and selling cotton, tobacco, whiskey, salt and other articles, on speculation ; the son claiming that he had been emancipated by his father, and engaged in business with him as equal partners ; held fraudulent and void as against creditors, under a bill filed by the assignee in bankruptcy of the debtor, on the ground that "the testimony falls far below the rule for upholding such transactions, as laid down in the well-considered opinions of this court" in the following cases : *Barnard v. Davis*, 54 Ala. 565 ; *Hubbard v. Allen*, 59 Ala. 283 ; *Harrell v. Mitchell*, 61 Ala. 270 ; *Thames & Co. v. Rembert's Adm'r*, 63 Ala. 561.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The original bill in this case was filed on the 28th Februars, 1874, by the assignee in bankruptcy of Zebulon P. Davis (the present appellant being the successor of the original assignee), against the said bankrupt, and against his wife (Mrs. Williametta Davis), his son (George L. Davis), and several other persons (alleged debtors of said bankrupt) ; and sought to set aside, on the ground of fraud, certain transactions between said bankrupt and his son, by which several notes and claims were assigned by the former to his son, who afterwards collected some of them, and had instituted actions at law on the others ; and also to subject a house and lot in Huntsville, and a plantation in Limestone county, to liability for the debts of the bankrupt, on the ground that they were purchased and paid for, in fraud of his creditors, with moneys furnished by him, or which belonged to him.  One of the transferred claims was a note (or bond) executed by Murphy & Donegan, on which an action was instituted by said George L. Davis, which suit was pending when the bill was filed ; and a judgment having been rendered in favor of the plaintiff in that suit, an amended bill was filed, seeking to enjoin the collection of the judgment by the plaintiff therein.   A temporary injunction was granted, on the filing of the amended bill; but, after answers were filed, denying the allegations of fraud, the injunction was dissolved by the chancellor ; and an appeal having been taken from his decree, it was reversed by this court, and a decree here rendered, directing the sheriff to pay the money, when collected under execution, to the register of the court.—*Barnard v. Davis*, 54 Ala. 565.

The present appeal is taken from the chancellor's final decree on pleadings and proof, dismissing the bill, but without assigning any reasons ; and the controversy, as here presented, principally relates to the house and lot in Huntsville, and the plantation in Limestone county.   The house and lot

was the residence of said Zebulon P. Davis, the bankrupt, and was sold under execution against him, issued on a judgment in favor of Thos. S. McCalley & Co., on the 6th September, 1869 ; at which sale, George L. Davis, his son, to whom the judgment had been assigned, became the purchaser, at the price of $3,500, and a deed was made by the sheriff, by his direction, to Mrs. Williametta Davis, his mother. The material facts in reference to this purchase, and in reference to the assignment of the judgment, are stated in the opinion of the court. The plantation in Limestone county, which had belonged to Nicholas Davis, senior, and afterwards to Zebulon P. and Lawrence R., his sons, was sold by the sons on the 12th February, 1860, to. William B. Smith, at the price of $12,000 ; part of which was paid in cash, and for the residue Smith executed his two notes under seal, each for $2,660.66, payable on the 1st January, 1862, and 1863, respectively, to said Zeb. P. and L. R. Davis. On these notes L. R. Davis collected about the amount due to him ; and on the 20th July, 1866, Zeb. P. Davis transferred his interest in them, by written indorsement, to said George L. Davis, his son. Smith having died, and his estate having been declared insolvent, his administrator procured an order of sale from the Probate Court, and sold the lands, under the order, on the 19th December, 1866 ; at which sale, said George L. Davis became the purchaser, at the price of $4,000, and paid the purchase-money, by agreement with the administrator, by entering a credit for the amount on the notes transferred to him by his father. The administrator afterwards executed to him a deed for the lands, and he was in possession when the bill was filed. Zeb. P. Davis was adjudged a bankrupt, on his own petition, on the 7th March, 1872 ; and the bill alleged that he "has [had] been insolvent since the late war." In answer to this allegation of the original bill, Zeb. P. Davis answered, "that he is not, and has not been since the close of the late war, the owner of any real estate in Limestone county"; and his answer was adopted by Mrs. Davis and George L. Davis, his wife and son ; but, in his answer to the amended bill, George L. Davis answered, as to this allegation, "that he does not believe said Zeb. P. Davis has been insolvent ever since the late war, and, if material, he requires proof of such allegation"; and Mrs. Davis, in her separate answer to the amended bill, used the same words.

As to the sale and purchase of the house and lot, and of the plantation, the bill alleged that said Zeb. P. Davis, "being insolvent, procured the sale of his said house and lot in Huntsville, and of his said real property in Limestone county, and transferred and assigned his said notes and bonds to the said

[Donegan v. Davis.]

George L. Davis, without a valuable consideration, for the purpose of hindering, delaying, and defrauding his creditors." This allegation, and all other charges of fraud, were denied by each of the defendants, positively, and with fullness of detail; and George L. Davis, in his answer, thus stated the facts connected with the purchase of the house and lot and of the plantation in Limestone county: "In the years 1860 and 1861, respondent was employed in the post-office in Huntsville by W. I. Windham, who was then the postmaster, and realized but little profit from his employment; but the money so made by him was kept and used by him, with the knowledge and consent of his father, the said Zeb. P. Davis, who made no claim to said earnings. In the fall or winter of the year 1862, respondent having, by agreement between his father and himself, been emancipated, and made free from the parental control and rights of the former, began business as the equal partner of the said Zeb. P. Davis, in buying and selling salt, whiskey, and other articles; and this partnership continued until the spring or summer of 1865, the business being carried on at intervals, and not continuously. During this time, respondent realized as his share of the profits of such speculations, which included the purchase and sale of osnaburgs, tobacco, homespun cloth, meat, flour, cotton, and other articles. the sum of about $6,000. After so great lapse of time, and no books being kept because of the war then raging, respondent can not state the amount with accuracy; but he can say with certainty the sum was not less than $6,000. Besides the amount made by joint trading with said Zeb. P. Davis, respondent realized the sum of more than $1,500 by keeping billiard-tables during the years 1864 and 1865. During all the time between 1862 and 1865, respondent remained emancipated, and freed from the control of his said father, who had recognized respondent as his equal partner in business, and waived all claim to his earnings. Respondent bought his own clothes, paid his own debts, and made his own contracts. When not absent on business, he boarded with and lodged with the said Zeb. P. Davis; and although he made no contract, by which he was to pay any stipulated board, out of his earnings he defrayed such part of the family expenses as he thought would be fair compensation to the said Zeb. P. Davis for his boarding and lodging. He did this, not at the request of the said Zeb. P. Davis, and probably without his knowledge; but it was known to respondent's mother, said Williametta Davis. During the time of said partnership, between the fall or winter of 1862 and the spring or summer of 1865, the sum of more than $3,500, of respondent's share of said partnership profits, and more than $1,500

[Donegan v. Davis.]

made by respondent by keeping billiard-tables in Huntsville, was received by said Zeb. P. Davis, who consented to keep the same for respondent, and to account to him for it, and never claimed to hold said money except for respondent; but the said Zeb. P. Davis, with the consent of respondent, upon the conditions agreed to by him, that said money should be repaid to respondent, spent said money in the support and maintenance of his family, and in the payment of his debts. In the spring or summer of 1866, respondent requested said Zeb. P. Davis to pay him said sum, which, on settlement previously made between them, was agreed to be $5,000; but respondent then thought, and still believes, that said Zeb P. was indebted to him in a sum greatly in excess of $5,000. On the 20th July, 1866, at the request of respondent previously made, said Zeb. P. transferred to him, in consideration of said indebtedness, the said two notes of William B. Smith, who was then dead; and it was agreed between respondent and said Zeb. P., that the amount collected on said notes should be placed as a credit on the said debt of $5,000." And the answer further alleged, that the notes of Donegan & Murphy, and the other claims on which suits were afterwards brought by George L. Davis as assignee, were transferred to him by said Zeb. P. Davis, at the dates specified as to each, in part payment of this indebtedness; and that the amount realized on all these debts and claims was less than $5,000:

The record is very voluminous, containing nearly one thousand pages. Most of the evidence relates to the transactions of Zeb. P. and George L. Davis during the late war, and other matters bearing on the *bona fides* of the transfers impeached by the bill. It can not be condensed within the limits proper for a report of the case, and an abstract of it would subserve no useful purpose. The final decree dismissing the bill, and the rulings of the chancellor on objections to testimony, are now assigned as error, the assignments being twenty-three in number.

HUMES & GORDON, for appellant.—1. The insolvency of Zeb. P. Davis at the close of the war, and at the time of the transactions which the bill seeks to avoid, though not admitted, is abundantly established by the evidence. The only witness who testifies that he was solvent after the war, bases his estimate of such solvency on the ownership of the very property which the bill seeks to subject to the payment of his debts; and the fact of insolvency is conclusively proved by executions returned unsatisfied. The record, then, shows the case of an insolvent debtor, pressed by suits pending and threatened, conveying all his visible property, in consideration of a

[Donegan v. Davis.]

recited indebtedness for a large amount, to his son, who has just attained his majority, and is without visible means, and who conveys the dwelling-house, a short time afterwards, on a fictitious consideration, to his mother, the grantor's wife; the deed being withheld from record until after the institution of this suit, and father and son uniting in mortgages of the property for their common benefit, and in pledges of the obligations given for the purchase-money. While these facts may not conclusively establish fraud, they make out a strong presumptive case, which requires that the whole transaction shall be closely scrutinized, and the suspicious circumstances satisfactorily explained.—*Barnard v. Davis,* 54 Ala. 565; *Thames & Co. v. Rembert's Adm'r,* 63 Ala. 561; *Young v. Dumas,* 39 Ala. 60; *Hubbard v. Allen,* 59 Ala. 283; *Hamilton v. Blackwell,* 60 Ala. 345; *McCain v. Wood,* 4 Ala. 258; *McCaskle v. Amarine,* 12 Ala. 18; *Borland v. Mayo,* 8 Ala. 104; *Bryant v. Young,* 21 Ala. 265; *Wiley v. Knight,* 27 Ala. 346; *Montgomery v. Kirksey,* 26 Ala. 185; *Marshall v. Croom,* 60 Ala. 121; *Harrell v. Mitchell,* 61 Ala. 271.

2. The sufficiency and *bona fides* of the consideration, the alleged indebtedness of Zeb. P. Davis to his son, is the principal question of fact; and the insufficiency of the evidence to establish this fact, when tested by the rules declared in the case of *Hubard v. Allen* (59 Ala. 283), which it closely resembles, can not be doubted. The alleged emancipation of Geo. L. Davis by his father, several years before he attained his majority, is the foundation on which this alleged indebtedness rests; since, without such emancipation, the earnings of the minor son belong to the father, and may be subjected to his debts. Under the decisions of this court, there can be no emancipation while the minor continues to be a member of the father's household: the principle is, that the father is entitled to the earnings of his minor son, unless he drives him away from home, or permits him to leave and provide for himself.—*Godfrey v. Hays,* 6 Ala. 501; *Lyon v. Bolling,* 14 Ala. 753, 763; *Stovall v. Johnson,* 17 Ala. 14, and argument of appellee's counsel in that case. The decisions of other courts are to the same effect.—*Dick v. Grissom,* 1 Freeman's Ch. 428; *Albee v. Albee,* 3 Oregon, 321; *Simpson v. Buck,* 5 Lansing, N. Y. 337; *Matthewson v. Perry,* 37 Conn. 435; *Hammond v. Corbett,* 50 N. H. 501; *Bell v. Hallenback,* Wright (Ohio), 751; *Graham v. Rooney,* 42 Iowa, 567. Although several witnesses for the defendants testify that George L. Davis made his own contracts, paid his own debts, and "had plenty of money," this falls far short of proving emancipation. The fact is not disputed that he remained a member of his father's house-

[Donegan v. Davis.]

hold, and his father's liability for his debts was conclusively admitted by the judgment by default on Sheffey's account.

3. The existence of the alleged partnership between father and son, during the war, is another disputed question of fact, resting on the same foundation, and supported only by general and indefinite statements, outside of the testimony of the parties themselves; while the negative proof to the contrary is strong and convincing. If the partnership existed, it was not known to many persons who were in a situation where they would probably have known it; and it is certain that no books, accounts, or memoranda were kept; and while the father received most (if not all) of the profits, he gave no acknowledgment of his indebtedness, and no settlement is claimed to have been had until the transfers of property now impeached, when the father was hopelessly insolvent, and his property was about to be swept away under executions. But, admitting the existence of the partnership as alleged, and that profits were realized out of the various transactions as stated, no ingenuity can work out a balance of $5,000 or $6,000 as due to George L. from his father. George L. admits that his first investment in the partnership, $1,800, was furnished by his father; and it is nowhere shown to have been refunded, or accounted for. A statement of the accounts, on the data furnished by the parties themselves, when closely scanned, will show that no indebtness existed. On all the facts proved, the record presents the singular anomaly of a young man who, having just attained his majority, and having no capital to commence business on his own account, has yet acquired by his own exertions, during his minority, all his father's property, while his father, engaged in the same transactions with him as a partner, is left insolvent.

4. The assignment to the plaintiff, under the seal of the court, "is conclusive evidence of the title of the assignee to take, hold, sue for, and recover the property of the bankrupt," and property conveyed by the bankrupt, in fraud of his creditors, vests in the assignee by virtue of his appointment.—U. S. Rev. Statutes, § 5049; 9 Wallace, 664; 56 N. Y. 649; 22 Wallace, 150; 12 Bank. Reg. 438; 13 *Ib.* 49; Bump on Bankruptcy, 519, notes; 7 Bush, Ky. 66. It is not essential to his right of recovery, that he should affirmatively show debts have been proved against the bankrupt estate. The existence of debts is affirmatively shown by the bankrupt's schedule, which is made an exhibit to the bill; and the present assignee is one of the creditors therein named. The creditor may prove his claim at any time before a dividend is declared.—Bump on Bankruptcy, 229, 556, 650, 662.

[Donegan v. Davis.]

WALKER & SHELBY, P. L. JONES, and L. W. DAY, *contra.*—1. The complainant is not entitled to recover in this suit, because it is not shown that any creditors have proved their claims against the bankrupt's estate, although seven years have elapsed since the discharge of the bankrupt. The assignee in bankruptcy is a trustee, first, for the creditors; and after the debts are paid, for the bankrupt himself. But the creditors, for whose benefit he holds and is entitled to sue for the property, are those who have proved their debts as required by the bankrupt law, and none others are within the provisions of the law. A creditor who has an independent security, may prefer not to prove his claim; and one whose debt is barred by the statute of limitations, or subject to be defeated by any other defense, may deem it useless to file it. After the lapse of so many years, without the proof of any debts, the presumption arises, that none exist, or that the creditors have waived their rights, or are barred. If the property is condemned, what shall the assignee do with the proceeds of sale? He can not pay the money to the bankrupt himself; for the transfers, though fraudulent as against creditors, are valid between the parties. He must, then, either pay the money into court, on the speculative theory that a legal claimant may hereafter present himself; or must return it to the grantees from whose possession it was taken, less the costs and expenses of the useless litigation.

2. The assignment to Donegan purports to convey all the property of which the bankrupt was possessed, or to which he was entitled, " on the — day of ——, 18—." This is void for uncertainty, and confers on him no right to recover any specific property.—*Neal v. Hughes*, 1 Gill & J. 7; *Bradford v. Pearson*, 9 Allen, 388; *Upton v. Archer*, 41 Cal. 85; 6 N. H. 421.

3. The emancipation of George L. Davis by his father is proved by the positive statements of the parties themselves, and of Mrs. Williametta Davis; and by the testimony of numerous other witnesses it is proved that George L. was allowed by his father to make his own contracts—that he paid his own debts, received his own wages, without objection or claim by his father, and provided for himself. The facts clearly establish the emancipation, unless it was necessary that the family ties should be disrupted, and the minor should abandon or be driven from his father's house; a test which is neither founded in reason, nor supported by authority. *McCloskey v. Cyphert*, 27 Penn. St. 220; *Johnson v. Silsbee*, 49 N. H. 543; *Dierker v. Hess*, 54 Mo. 246; *Abbott v. Converse*, 4 Allen, 533; *Conover v. Cooper*, 15 Barb. 115; *Whiting v. Earl*, 3 Pick. 201. These authorities establish the proposition, that emancipation is a question of fact, to be proved

(24)

like any other facts; and while there are certain circumstances from which it will be implied, as when the child is driven away from home by his father, it may be proved as well by other evidence; and this is, in substance and effect, the principle to be deduced from the decisions of this court, cited for appellant.—6 Ala. 501; 14 Ala. 753. Aside from all the other evidence on the question, the existence of the partnership between the father and son operated, *proprio vigore*, to emancipate the son.—*Penn v. Whitehead*, 17 Grattan, 504. Such an agreement between father and son is not a fraud upon the creditors of the father, but will be sustained although the father is insolvent.—27 Penn. St. 220; 49 N. H. 543; *Atwood v. Holcomb*, 39 Conn. 270; *Abbey v. Deyo*, 44 N. Y. 343.

4. The existence of the partnership between George L. Davis and his father, commencing in 1862, and continuing, with intervals, or interruptions in the business, until the close of the war, is established by the direct testimony of the parties themselves, and of Mrs. Davis, and is corroborated by the affirmative testimony of four disinterested witnesses. Against this affirmative evidence the record shows nothing, except the uncertain and indefinite statements of witnesses who testify to their ignorance of the partnership, and several of whom are shown by the record to be interested in the litigation.—1 Stark. Ev., 6th ed., 516; *Pool v. Devers*, 30 Ala. 672. In this connection, the condition of the country at the time is a material matter of consideration. On account of the war then flagrant, all regular business was suspended, and dangerous and illicit traffic naturally sought secrecy; the success, even the continuance of such business, required that it should be kept from the knowledge of the general public. No books were kept by the partnership, and no regular accounts were preserved; a prudent and necessary precaution, practiced, as the record shows, by men who had long been engaged in business in Huntsville, and rendered necessary by the perilous times But memoranda of these transactions were preserved, and were made the basis of the settlement in 1866; after which, they were useless, and there was no longer any reason for keeping them. The testimony as to the existence of the partnership is full and explicit, but too voluminous for abbreviation. The court is invited to a critical examination of it. When tested by the principles which the law applies for the judicial consideration and elimination of evidence, the conclusion is irresistible, that a partnership existed; and the further conclusion that, on a settlement of the partnership accounts, a balance of at least $5,000, as admitted by Zeb. P. Davis, existed in favor of George L. Davis, is a matter of simple arithmetical calculation. The

[Donegan v. Davis.]

item of $1,800, borrowed money, though not expressly men-
tioned, was, of course, included in the settlement; and there
was no more necessity for mentioning it, than for mentioning
every other item which entered into the settlement.

5.  The bill attacks the validity of the transfers, not on the
ground of fraud in fact, but for the want of a valuable con-
sideration, or fraud in law against existing creditors.  If, then,
a valuable consideration is establshed by the evidence, the
transfers must be sustained.—*Crawford v. Kirksey*, 55 Ala.
If fraud were charged, the *onus* of proving it is on the party
who alleges it; and the court will not impute it, when all the
facts are susceptible of explanation on any other reasonable
hypothesis.—1 Greenl. Ev. §§ 74, 80; *Insurance Co. v. Pett-
way*, 24 Ala. 544; *Tompkins v. Nichols*, 53 Ala. 197; *Smith v.
Br. Bank*, 21 Ala. 125.

STONE, J.—This is the same case as *Barnard v. Davis*,
54 Ala. 565.  It is a bill filed by the assignee in bankruptcy
of Zebulon P. Davis, to recover, for the benefit of creditors,
certain property alleged to have been conveyed by the bank-
rupt in fraud of his creditors.  The conveyances were made,
chiefly, in 1866 and 1867, and the petition in bankruptcy was
filed in 1872.  The present bill was filed in less than two years
afterwards.  The chancellor refused complainant relief, and
dismissed his bill on final hearing, without assigning any
reason therefor.  We suppose the decree was rendered on the
testimony; and, hence, it will be our duty to affirm his decree,
unless we are clearly convinced that it is wrong.—*Rather v.
Young*, 56 Ala. 94; *Bryan v. Hendrix*, 57 Ala. 387.

It is contended for appellees, that the decree of the chan-
cellor should be affirmed, because the record fails to show
that any creditor had proved his claim against the bankrupt
estate.  Section 5077 of the Revised Statutes of the United
States declares *how* claims against bankrupts shall be proved,
and the next two sections direct *by* and *before* whom such
proof must be made.  Neither section declares *when* the claim
must be proved.  Sections 5068–9 make provision for the
proof of certain classes of claims, at any time before the final
dividend is declared.  We can not know there were not cred-
itors of this estate falling within one of these classes.  But
we do not deem it necessary to invoke this possible category.
By the adjudication in bankruptcy, the appointment of an
assignee, and the assignment of the district judge or register,
the title and right to sue pass *eo instanti* to the assignee, who
may then demand, sue for, and possess himself of the bank-
rupt assets, as their legal owner.  His authority to maintain
suits, in such fiduciary right, stands on the same footing as

[Donegan v. Davis.]

that of an executor or administrator. It can not be collaterally assailed, except by showing the appointment to be void *ab initio.*—Blumensteil's Bankruptcy, 228 ; *Herndon v. Howard,* 9 Wall. 664 ; *Sloan v. Lewis,* 22 Wall. 150 ; *Cone v. Purcell,* 56 N. Y. 649 ; *Dambman v. White,* 12 B. R. 438 ; Abb. Tr. Ev. 9, § 23. If it were affirmatively shown that no debts were proved, that none existed which could be proved, that would, possibly, be an answer to the suit. . That, however, would be defensive matter, and is not this case.—*Page v. Waring,* 76 N. Y. 463, 473 ; *Charman v. Charman,* 14 Vesey, 580 ; *In re Hoyt,* 3 B. R. 55 ; Perry on Trusts, § 352. There is nothing in this objection.

The dwelling, or homestead, is claimed as the property of Mrs. Williametta Davis, wife of the bankrupt, as a gift or present from her son, George L. Davis. The facts connected with the purchase of the homestead are as follows : McCalley & Co. held a judgment against Z. P. Davis, which, in 1866, amounted to over four thousand dollars. In July, 1866, Geo. L. Davis purchased from Price, Farriss & Co. a note, or bond, made by McCalley & Co., on which there was due nearly seven hundred dollars, for which he gave and paid three hundred and ninety-three dollars. He brought suit on this note, or bond, against McCalley & Co., and had garnishment served on his father, Zebulon P. Davis, as a supposed debtor to McCalley & Co. In September, 1866, a settlement and adjustment were had between George L. Davis and McCalley & Co., by which the latter conveyed to the former their said judgment against Zeb. P. Davis, in consideration of said note or bond so purchased from Price, Farris & Co., and of eight hundred and seventy dollars in money, paid by Geo. L. Davis to McCalley & Co. This said judgment of McCalley & Co. against Zeb. P. Davis thus cost George L Davis twelve hundred and seventy-three dollars. The homestead was sold by the sheriff, under an execution issued on this judgment ; was bought by said George L., in the name of his mother, title made to her, by his direction, and the property paid for by total or partial credit on said judgment. The property cost George L., in money, $1,273, though the judgment with which he purchased it amounted to over four thousand dollars. There is no charge or claim that the homestead was worth more than the sum of the judgment under and with which it was purchased. The contention is, that George L. had no money in his own right, and that the money with which the note and judgment were purchased were the property of Zeb. P. Davis, and, therefore, this is but an indirect gift of Zeb. P. Davis to his wife, in fraud of his creditors.

George L. Davis became twenty-one years old August 31st,

[Donegan v. Davis.]

1866; a month after he purchased the note from Price, Farris & Co., and a month before he purchased the judgment from McCalley & Co. When he commenced those purchases, he had on deposit in bank, and in his own name subject to his check, a sum more than sufficient to pay both purchases; and about the time he made the McCalley purchase, he checked out a sum a little in excess of the cash he paid them. Was that money his, and did he make those purchases with his own money? Possibly, this is stating the question too strongly against him. Is it shown, or do the circumstances lead to the inference, that they were made with the money of Zeb. P. Davis, his father? There is no direct proof that Zeb. P. Davis, the father, had any agency in, or connection with the transactions, which culminated in the purchase of the homestead, at sheriff's sale. Neither is there direct proof of the source from which the money deposited in bank was derived. We are thus left to draw inferences of its source, from the facts and circumstances in evidence.

It is contended for appellants, that the earnings of George L. Davis, up to the time of his reaching twenty-one years old, belonged to his father, because the proof fails to show he had been emancipated from paternal control. If this be so, then it is fatal to Mrs. Davis' claim of the homestead; because it is manifest the money, employed in its purchase, was acquired before George L. reached his majority. The argument is, that there can be no emancipation, so long as the minor remains under the parental roof, and continues a member of the family. *Godfrey v. Hays*, 6 Ala. 501, is relied on in support of this proposition. This court, in that case, referring to *Nightingale v. Withington*, 15 Mass. 272, said: "It can not be doubted, that if the father should refuse to support his child, and drive him from the parental roof, he could not claim his earnings. The law would be the same, if the father should permit the child to labor for his own benefit; but, in such a case, the child must cease to be a member of the family; the relative obligation of parent and child must cease— in the language of the cast just cited, the child must be 'emancipated.' * * When the child is a part of the family, the product of his labor belongs to the father; and is, therefore, subject to the payment of his debts."

The case referred to—*Nightingale v. Withington, supra*—scarcely supports some of the expressions used in the case of *Godfrey v. Hays*. The language of the Massachusetts court is: "If the father should refuse to support a son, should deny him a home, and force him to labor abroad for his own living; or should give or sell him his time, as is sometimes done in the country (although this latter practice is certainly

questionable, as to any promise made in consideration of it) ;
the law will imply an emancipation of the son." It will be
seen that, according to this authority, the child may be eman-
cipated, by selling or *giving* him his time ; and in this connec-
tion, nothing is said about the minor ceasing to be a member
of the family. In that case, the report does not show whether
or not the minor had left the paternal roof. The son traded
and indorsed the paper given him for such services, and suit
was brought upon it against the maker. After the transfer
of the paper, and notice of it to the maker, the latter paid
the sum of it to the father, and took his receipt therefor.
This payment and receipt were offered in defense of the
action, and it was ruled that the payment should not avail
the defendant.

In the later case of *Whiting v. Earle*, 3 Pick. 201, the wages
of the minor son were sought to be condemned by attach-
ment, or trustee process, to the debts of the father. The son
boarded with his father, and worked out under a contract
made by himself—his father not shown to have been con-
sulted. The employer was to pay stipulated wages, and was
to pay for the board of the employe. The court said : "Where
such a contract is entered into, without any fraud, for the
advantage of the son, on the principles of common justice,
and according to decided cases, he is entitled to the profits of
his own labor. We go so far as to say, that where a minor
son makes a contract for his services on his own account, and
the father knows of it, and makes no objection, there is an
implied assent that the son shall have his earnings."

In *McCloskey v. Cyphert*, 27 Penn. St. 220, Judge BLACK,
with his accustomed force and terseness, said : " The eman-
cipation of the son from the father's control may be as per-
fect when they both live together under the same roof, as if
they were separated. The father's renunciation of all legal
right to the son's labor is not the less absolute, because other
family ties continue unbroken ; and the son's security in his
rights of property would not be at all increased by turning
his father out of doors." *Johnson v. Silsbee*, 49 N. H. 343, is
a strong authority in the same direction. See, also, *Penn v.
Whitehead*, 17 Grattan, 503.

In the case of *Godfrey v. Hays, supra*, the court say, that
after emancipation, " no doubt the father might employ his
child, and compensate him for his labor, and the product of
his earnings would be beyond the reach of the creditors of
the father." When this is the case, must the minor child
leave home, board out, and cease to be a member of the fam-
ily? The case of *Lyon v. Bolling*, 14 Ala. 753, states the prin-
ciple pretty much as *Godfrey v. Hays* had done. It was,

[Donegan v. Davis.]

however, not necessary to be decided in that case, as the infant son had left the parental roof. *Stovall v. Johnson*, 17 Ala. 14, states the principle in a somewhat modified form. We can not agree that, in every case, there must be an absolute abandonment of home, a disrupting of family ties, before emancipation of a minor child is accomplished. Emancipation *vel non* is, at most, a question of fact, to be determined by the circumstances in evidence. If the father be insolvent, and in the transaction assailed by creditors of the father there is simulation, or other evidences of fraud, or secret trust, this should be decisive of the claim of emancipation, and the earnings should be adjudged to belong to the father. In the present case, the testimony shows that George L. Davis, all the while, made compensation for his board; and we are convinced he must be regarded as having been emancipated during the years 1864–5. We think his adventure in the billiard-table business, and his other speculations, sufficiently account for his ownership of the money deposited in bank, which resulted in the purchase by him of the homestead. We are not clearly convinced that the father's means entered into this purchase, and we therefore affirm the decree of the chancellor, so far as that piece of property is concerned. The wants of this case do not require us to go the length of Judge BLACK. Sufficient for this case, that George L. Davis was self-supporting, as the evidence convinces us he was. This takes the case without the influence of *Godfrey v. Hays, supra*.

The claim to the tract of land in Limestone county depends on different facts, and different intendments. This rests on the *bona fides* of the transfer of the Smith bonds from Zeb. P. Davis to Geo. L. Davis. The consideration of this transfer is an alleged indebtedness from the father to the son, of five thousand dollars, growing out of their alleged partnership transactions during the war. This claim could scarcely be maintained, under the principle declared in *Stovall v. Johnson, supra*. But we go farther. The testimony in this record falls far below the rule for upholding such transactions, as laid down in many well-considered opinions of this court. *Barnard v. Davis*, 54 Ala. 565; *Hubbard v. Allen*, 59 Ala. 283; *Harrell v. Mitchell*, 61 Ala. 270; *Thames v. Rembert*, 63 Ala. 561. There is a vast volume of the testimony, and, when considered together, it does not reach that clearness and fullness required in transactions like this. It falls very far below it. We could not collate and criticise it, without swelling this opinion unduly. The facts and circumstances of this case outweigh all general declarations of fairness, and general denials of fraud.—*Thames v. Rembert, supra*.

So far as the Limestone county plantation described in the pleadings, and the money collected on the note of Donegan & Murphy, and any other collectible claims transferred by Zebulon P. to George L. Davis are concerned, the decree of the chancellor is reversed; and this court, proceeding to render the decree the Chancery Court should have rendered, doth order and decree—

*First*, that the money realized from the suit against Donegan & Murphy, in the hands of the register, with all accrued interest, if any, be paid to the complainant, assignee, taking his receipt therefor.

*Second*, that George L. Davis be, and he hereby is, enjoined from recovering or receiving any moneys on any of the claims transferred by Zebulon P. Davis to him, described in the pleadings; and that the complainant, assignee, be authorized to receive and collect the same; and, if necessary to that end, that he have leave to use the name of George L. Davis, first indemnifying the said George L. against costs, with a bond and two good sureties, to be approved by the register and payable to said George L. Davis, in such penalty and condition as such register may prescribe.

*Third*, that said complainant, as assignee of Zebulon P. Davis, bankrupt, have and recover of said George L. Davis the tract of land in Limestone county described in the pleadings, and bought by said George L. Davis at administrator's sale; and that writ of possession issue to put him in possession, when the present crop is gathered, not later than the 15th day of December, 1881.

*Fourth*, it is referred to the register to take an account of the rents of the said lands, from the time said original bill was filed, to the termination of said George L. Davis' possession under this decree; and he will allow credit for all taxes paid, against the rent of the year for which such taxes were paid; and he will compute interest on each yearly rent, until the coming in of the report. In taking said account, he will consult the pleadings and testimony on file, and such other legal evidence as may be offered, including re-examination of witnesses heretofore examined on other matters, if necessary. He will make his report, with all convenient speed, to the Chancery Court of Madison, to be there considered and passed on. If claim is made by the said George L. for valuable permanent improvements made by him, the register will take and report the testimony to the chancellor, for his decree thereon. The sum of the rents and interest, less credits to be allowed as above, it is ordered and decreed the said George L. Davis pay to complainant, for which exe-

[Jenkins v. Lockard's Adm'r.]

cution of *fieri facias* may issue after the confirmation of the report, and decree thereon.

Let the costs of appeal in the court below and in this court, and the costs of the Chancery Court, to be taxed by the register, be paid, one-third by the complainant as assignee, and two-thirds by George L. Davis.

Reversed, rendered, and remanded for taking the account, and for execution.

BRICKELL, C. J., not sitting.

