# Halsey, *et al.* v. Murray.

*Bill in Equity for Subrogation and Contribution.*

1. *Injunction restraining levy of execution of a judgment against a partnership upon individual property; liability under bond.*—Where upon the issuance of an execution on a judgment rendered against a part-

[Halsey, *et al.* v. Murray.]

nership as a firm, the individual members file a bill in equity to enjoin the levy of the execution on their individual property, the writ of injunction issued does not operate "to stay proceedings after judgment," within the meaning of section 3522 of the Code; and under the bond given to secure the issuance of the writ, there is no liability for the payment of the judgment, since, notwithstanding the writ of injunction, the plaintiff in execution could have proceeded to collect his judgment by the levy of the execution upon the firm property, which was the only levy authorized.

2. *Same; what sort of bond should be executed.*—Where the individual members of a partnership file a bill praying for an injunction to restrain the levy on their individual property of an execution issued under a judgment rendered against the firm, the bond required, in order to obtain the injunction, should be executed under section 3524 of the Code, which provides for bonds in cases other than injunctions against judgments (Code of 1886, §§ 3522, 3523), and should be conditioned as required by said statute, for payment merely of damages in case of dissolution of the injunction.

3. *Same; erroneous misconception of statutory requirements does not fix liability.*—The fact that the bill for injunction in such case was filed under a mistaken belief of counsel that the judgment against the firm was collectible out of the individual property of the partners, will not make the bondsmen liable on the bond erroneously executed as provided by section 3522 of the Code and conditioned for the payment of the judgment.

4. *Same; provisions of section 3522 not applicable to bills filed by strangers to the judgment.*—Section 3522 of the Code, requiring that a bond given in order to obtain an injunction "to stay proceedings after judgment" should be conditioned to pay the amount of the judgment in the event of the dissolution of the injunction, must be considered in connection with sections 3521, 3528, 3529 and 3531, which are *in pari materia*; and when so considered, section 3522 applies only where an injunction is sought by a defendant in a judgment, and does not apply to strangers seeking to prevent the collection of the judgment out of their property.

5. *Injunction bond by individual members of a partnership; bond by strangers, how conditioned.*—An injunction bond given by the individual members of a partnership, who file a bill to enjoin the levy on their individual property of an execution issued on a judgment against the firm only, is a bond given by strangers to the judgment, and is not to be conditioned as required by section 3522 of the Code of 1886.

6. *Injunction bond by strangers to judgment enjoined; summary judgment.*—Where a stranger to a judgment, under an erroneous impression that it created a liability against him or his property, files a bill seeking to restrain its collection by levying an execution on his property, upon the dissolution of the injunction no summary judgment for the amount of the judgment enjoined can be rendered under section 3529 of the Code

[Halsey, *et al.* v. Murray.]

against the obligors in the bond which was given to secure the writ of injunction; the statute (Code of 1886, § 3524) requiring that the bond in such cases should be conditioned "to pay all damages and costs which any person may sustain by the suing out of such injunction, if the same is dissolved." (*McCalley v. Wilburn,* 77 Ala. 549, overruled.)

7. *Supersedeas bond, restraining injunction; summary judgment.*—A supersedeas bond given to restore an injunction dissolved upon final or interlocutory decree, does not have the force and effect of a judgment upon an affirmance of the decree, and no execution can be summarily issued against the obligors therein.

8. *Summary judgment on injunction bond; registration does not create lien.*—Where a bill is filed by a stranger to a judgment to enjoin its collection out of his property, upon the dissolution of the injunction, the register has no authority to certify the bond and its dissolution to the clerk of the court in which the judgment was rendered, and the clerk has no authority to enter a summary judgment against the bondsmen upon such certificate, and, therefore, a certificate of the clerk that a judgment had been recovered against the obligors of the injunction bond and its registration in the probate office, under the statute, creates no lien upon the property of the obligors in the bond.

9. *Common law liability on bond; payment by surety; right to contribution; burden of proof.*—Although a bond given to enjoin the collection of a judgment by a stranger to the process may not be binding as a statutory bond, it may still be valid and binding as a common law obligation, which a surety may discharge voluntarily, and thus become entitled to a re-imbursement from the principal or contribution from his co-sureties; but the burden is upon him to show that the amount so paid was in fact recoverable upon the bond.

10. *Injunction bond in suit by stranger to judgment; right of surety, voluntarily paying judgment, on dissolution of injunction, to contribution.* Where on a bill filed by a stranger to a judgment to enjoin the levy of an execution issued thereon upon his property, the writ of execution was issued in accordance with the prayer of the bill, but the injunction bond was conditioned to pay "the amount of the judgment herein enjoined," there was no injunction of the enforcement of the judgment against the defendant, upon whose property only could the execution be rightfully levied; and if upon the dissolution of the injunction, one of the sureties on the bond voluntarily pays the judgment upon which the execution issued, he can not enforce contribution from his co-sureties, since the bond created no liability for the payment of such judgment.

11. *Injunction bond in suit by individual members of a partnership to enjoin levy of execution on judgment against firm; when surety has no right to contribution on paying judgment after dissolution of injunction.*— Where on a bill filed by individual members of a partnership to enjoin the levy upon their individual property of an execution issued on a judgment recovered against the firm, the injunction bond is condi-

tioned to pay "the amount of the judgment herein enjoined," and the writ of injunction is issued, in accordance with the prayer of the bill, to restrain a levy of the execution upon complainant's property, the injunction did not affect the judgment against the firm, nor its enforcement, and the injunction bond created no liability for the payment thereof; and if, upon the dissolution of the injunction, one of the sureties on the bond voluntarily pays the amount of the judgment, and has it transferred to him, he obtains no right as against his principal or his co-sureties, and can not enforce reimbursement or contribution.

12. *Appeals; cost of transcribing immaterial matter in record taxed against the party at whose instance it is done.*—Where, in the preparation of a transcript for appeal, one of the parties to the suit unnecessarily encumbers the record by having transcribed therein unnecessary and immaterial matter, the cost of transcribing such portions of the record will be taxed against the person at whose instance it is inserted.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by Malcolm R. Murray, the appellee, against Charles H. Halsey and William L. Halsey, individually, and against the firm of C. H. & W. L. Halsey, a firm composed of Charles H. and William L. Halsey.

The bill averred the following facts: At the August term, 1891, of the circuit court of Madison county, John Thomas Eason sued the firm of Baldridge, Murray & Halsey, a firm composed of William F. Baldridge, A. F. Murray and Charles H. Halsey, and on February 10, 1892, recovered a judgment against the said firm for $703.88 and costs of the suit. On March 17, 1892, an execution was issued on this judgment commanding the sheriff that "of the goods and chattels, lands and tenements of Baldridge, Murray & Halsey, you cause to be made the sum of $703.88." On the day of the issuance of this execution, it was placed in the hands of the sheriff, and on April 8, 1892 William F. Baldridge and Charles H. Halsey filed a bill in the chancery court of Madison county to enjoin the collection of said judgment, and upon the bill being presented to the judge of the eighth judicial circuit, he entered on the bill an order that, upon the complainants therein executing a bond in the sum of $1,435 with security, to be approved by the register, payable and conditioned as required by law, the register should issue the injunction prayed for in the bill.

[Halsey, *et al.* v. Murray.]

The complainants executed the bond as required by the order of the circuit court, and it was approved by the register on April 26, 1892. This bond was executed by William F. Baldridge and Charles H. Halsey as principals, and by the complainant, M. R. Murray and A. F. Murray, and C. H. and W. L. Halsey, as sureties. Upon the approval of the bond, a writ of injunction enjoining the levy of said execution was issued, and was duly served upon the sheriff of the county in whose hands the execution was, and against John Thomas Eason, the plaintiff in execution.

This writ of injunction was made Exhibit D to the original bill, and recited that "the sheriff was commanded and enjoined from making any levy under the execution now in your hands in favor of the said John Thomas Eason v. Baldridge, Murray & Halsey on the property of the complainants, until this honorable court can make such investigations and make such orders as justice and equity demand," &c. John Thomas Eason, the plaintiff in execution, answered said bill, and demurred thereto, and also filed a motion in writing to dissolve the injunction for want of equity in the bill, and on the denials of the answer.

On May 22, 1892, the chancellor granted the motion and rendered a decree dissolving the injuntion, and in this decree the chancellor required Eason to give a bond under the statute in the sum of double the amount enjoined. Eason executed the bond as required by the decree of the chancellor, and was proceeding to have execution issued on the said judgment and on the execution bond, when the complainants in the bill obtained a decree from the chancellor restraining the execution, pending an appeal which had been previously taken to the Supreme Court; the decree at the same time requiring the complainants, William F. Baldridge and Charles H. Halsey to give bond with sufficient security in the sum of $1,500. This bond was executed, with William F. Baldridge and Charles Halsey as principals, and the complainants, M. R. Murray and C. H. and William L. Halsey, as sureties.

On April 27, 1893, the decree of the chancellor dissolving the injunction was affirmed by the Supreme Court, and upon a certificate of affirmance to the register, the latter, on May 1, 1893, certified the injunction

bond to the clerk of the circuit curt under section 3529 of the Code, and thereupon the clerk of the circuit court issued an injunction with said certificate attached and placed the same in the hands of the sheriff. This execution contained the following direction to the sheriff: "You are hereby commanded that of the goods and chattels, lands and tenements of Baldridge, Murray & Halsey, a firm composed of W. F. Baldridge, C. H. Halsey and A. F. Murray, William F. Baldridge, M. R. Murray, C. H. & W. L. Halsey, C. H. and W. L. Halsey, defendants, you cause to be made the sum of seven hundred and three and 88-100 dollars, which John Thomas Eason, plaintiff, recovered of them, said firm, on the 10th day of February, 1892, by the judgment of the circuit court, held for the county of Madison." Upon the issuance of this execution, the sheriff demanded its payment by the complainant, and threatened, if he did not pay it, to levy upon complainant's property. Thereupon the complainant paid the amount of said judgment, had the judgment and execution transferred and assigned to him. After said judgment was so assigned, the complainant filed in the office of the judge of probate, the certificate of the circuit court clerk, stating the amount and date of said judgment, the court which rendered it, the names of the parties and of the plaintiff's attorneys, and to whom said judgment had been assigned, which certificate was duly registered and recorded in said office. After assignment of said judgment, the clerk of the court, at the request of the complainant, issued an *alias* execution thereon against the defendants therein, and the obligors on said injunction bond, which execution was returned unsatisfied. Subsequent to the return of said execution, the register in chancery certified to the clerk of the circuit court a second injunction bond, upon which the complainant requested the clerk to issue an execution, with which request the clerk refused to comply.

The bill alleges that W. F. Baldridge, one of the principals in said injunction bond, is insolvent, and is absent from the State ; and that A. F. Murray, one of the sureties on said bond is also insolvent ; and then avers that complainant "is subrogated to all the rights, remedies and liens of John Thomas Eason against the defendant, Charles H. Halsey, and that he is entitled to contribu-

[Halsey, *et al.* v. Murray.]

tion as against his co-sureties, William L. Halsey, and C. H. & W. L. Halsey; that as between the parties to this bill the said debt and judgment is primarily the debt of Charles H. Halsey, who in equity should be required to pay the same; and that as between the sureties on said bonds who are solvent, each should, in equity, be required to contribute equally to its payment and satisfaction." After describing in the bill the property owned by the firm of Charles H. and William L. Halsey, the bill then avers that "complainant has a lien on the said property for the amount of the said judgment and costs, and is entitled to have the same condemned and sold to satisfy the same. After paying said judgment, as stated, and receiving a transfer of the same, your orator also paid the court costs for which said execution had also been issued, amounting to $19. Camplainant has requested the defendant, Charles H. Halsey, to re-imburse him by paying to him the amount of said judgment and costs; and he has requested William L. Halsey to pay his equitable part of the said obligation as co-surety; and has made a like request of the said firm of C. H. & W. L. Halsey. They have refused to comply with such request, and announced that complainant shall be made to suffer the loss of the entire amount paid by him. They have threatened to sue the register for certifying the said injunction bonds, and to sue the clerk for issuing said executions, and they refuse to recognize any liability as principal or as surety or sureties on the said bonds."

The prayer of the bill was "That a decree may be rendered establishing and enforcing the lien of the said judgment on the property described in this bill; and that complainant may be subrogated to all the rights and liens of the said John Thomas Eason, as against the said defendants; that the right, title, and interest of Charles H. Halsey in the said property, herein described as his, may be sold to pay the said judgment and costs; and that the right, title and interest in the property described as the property of complainant's co-sureties may be sold to pay their equitable part of the said debt or judgment. And your orator prays for all other and further relief, either general or special, to which he is entitled on the facts as stated."

The defendants demurred to the bill, and assigned

[Halsey, *et al.* v. Murray.]

among others, the following grounds therefor : "8 The said bill shows on its face that said M. R. Murray made voluntarily payment of money when there was no necessity in law or equity that he should pay it. 9. This bill shows upon its face that the execution issued in pursuance of the certificate of the register in chancery was void, and this complainant paid his money under a void execution." "14. Said bill fails to show that said bond has ever been sued on, or reduced to judgment, or to show any legal liability or necessity why the said M. R. Murray should have paid anything thereon. 15. Because Exhibit D. made a part of the bill of complaint shows that the collection of the judgment against Baldridge, Murray & Halsey was not enjoined or restrained, but that the levy of the execution on the individual property of Charles H. Halsey and William F. Baldridge or either of them was alone enjoined and restrained." This demurrer and each ground thereof was overruled, and upon the overruling of the demurrer the respondents filed their answer. There were no disputed questions of fact in the case ; the averments of the bill being substantially proved by the exhibits and the two witnesses examined, and no witnesses being examined by the defendant. The other facts of the case are sufficiently stated in the opinion.

Upon the final submission of the cause, on the pleadings and proof, the chancellor decreed that "the complainant is entitled to relief ; and that the complainant is entitled to contribution from his said co-sureties ; and that he is entitled to be subrogated to all liens, rights and remedies of the said John Thomas Eason against the defendant, Charles H. Halsey." The defendants prosecute the present appeal, and assign as error the decree of the court overruling their demurrers, and the final decree granting the relief prayed for.

RICHARDSON & PULLEY, for appellants. — The amount of the injunction bond was fixed under section 3524 of the Code. Said bond followed the bill and the writ of injunction was predicated upon the bill and the bond. Said bill, writ and bond could not and did not enjoin a judgment against other parties than the complainants therein.—1 High on Injunctions, (3 ed.), § 121 ; 2 High on Injunctions, § 1552, pp. 1179, 1180.

There can not be an injunction of a judgment unless all the parties to the judgment at law are parties to the injunction suit, because they who are not parties to a suit are in no way affected thereby; and hence the firm of Baldridge, Murray and Halsey being in no sense parties to the injunction bill, could not be affected by its prayer or its results, and the execution against said firm would be still alive and in tact. The lien created by said judgment against them is in no wise impaired by said injunction bill to which they are not parties. And if the defendants to a judgment at law are not parties to the bill for an injunction, then any orders made by the chancellor in the injunction suit affecting the defendants in the judgment at law or restraining in any way the execution against them is *coram non judice* and consequently void not only directly but indirectly on collateral attack and under all circumstances.—*Mead v. Larkie,* 66 Ala. 87; *Hartsfield v. Harvoley,* 71 Ala. 233; *Black v. Black,* 4 Bradf. N. Y. 205; *McCurry v. Hooper,* 12 Ala. 823; *Woodruff v. Taylor,* 20 Vt. 65; *Towns v. Springer,* 9 Ga. 130.

Where the purpose of the injunction is merely to restrain the sale of a specific article of property under execution a bond given by one not a party to the judgment is considered in equity only as a security to the obligee for such injury as may actually accrue and not for the whole amount of the debt even though it be so conditioned.—2 High on Injunctions, (3d Edition), 1221, § 1623; *McCalley v. Wilburn & Co.,* 77 Ala. 549; *Dunn v. Bank of Mobile,* 2 Ala. 152. "Where a judgment is enjoined at the suit of a stranger to it and an injunction bond given by him to restrain the sale of a particular article of property, whatever may be the condition of the bond, it operates in equity only as a security to the obligee for the injury that may accrue, not for the amount of the debt. Here the law is laid down in stronger terms than the condition of the bond in the present case requires. It may also be remarked that no execution can be issued upon the bond: (1.) Because it does not enjoin the judgment but only the proceedings thereon as it respects the premises in controversy. (2.) Because the defendant at law is not the complainant in equity." *Bartlett v. Gayle,* 6 Ala. 305. If this case is law and it has never been questioned, certainly then the injunction

[Halsey, *et al.* v. Murray.]

bond is not a judgment and no money could have been collected under an execution thereon.—*Thomas v. Brashear*, 4 Monroe 65 ; *Moore v. Hallum*, 1 Lea (Tenn.) 511 ; *Carlin v. Hudson*, 12 Texas 202 ; *Scarlett v. Hicks*, 13 Fla. 314 ; *Hanley v. Wallace*, 3 Monroe, 184.

There can be no doubt but that a court of equity has the right to compel a party to elect between a remedy at law and one in equity as to the same subject matter, etc. It may, however, require him to file first a sufficient answer. This however would seem unnecessary when the bill shows all the essential facts upon its face and this point in that instance ought to be taken advantage of by demurrer.—*Ex Parte Gold Life Insurance Co.*, 59 Ala. 192 ; *Dunlap v. Newman*, 52 Ala. 178. Therefore, the complainant in this cause ought not to be allowed to vent his worry and nervous impatience upon these defendants by pouncing upon every avenue of escape that ingenuity and skill can devise. The dissolution of the injunction upon which the summary judgment is predicated relates to the dissolution of the writ of injunction.—*Shorter's Admr. v. Mims*, 18 Ala. 655. Therefore if an execution was issued at all it ought to have been issued against the bond approved April 26, 1892, and not the bond of July 5, 1892. In addition the bond upon which execution did issue is certainly not the bond which the statute contemplates an execution should issue on upon the dissolution of the injunction. That bond is the one prescribed by section 3522, Code of Ala. 1886, or Acts 1888-1889, p. 116.

The bond upon which execution issued, and the summary judgment was rendered, was given in accordance with Rule 87, page 826 of Code of 1886.

The judgment of the Supreme Court merges in it the judgment of the lower court, and as a consequence, if any execution issued at all it ought to issue from the court upon the supersedeas appeal bond which the record also shows was given in double the amount of the judgment. Otherwise the appeal bond required by law and which was given in this case serves no purpose whatsoever.—Code of 1886, §§ 3623-3625 ; *Wiswell v. Munroe*, 4 Ala. 9 ; *Campbell v. Spence*, 4 Ala. 550 ; *Barron v. Pagles*, 6 Ala.423 ; *Hodges v. Gewin*, 6 Ala. 478 ; *Thompson v. Gray*; 84 Ala. 559.

The complainant, M. R. Murray, has paid a debt

[Halsey, *et al.* v. Murray.]

voluntarily where there was upon the principal no legal obligation to pay. Unless Charles H. Halsey would have been legally forced to pay this debt and the exact amount, then M. R. Murray can not by any act of his fix the amount of their liability, or indeed any liability itself upon his principal.—*Powe v. Tyson,* 15 Ala. 221; *Stallworth v. Preslar,* 34 Ala. 505.

D. D. SHELBY, *contra.*—1. It is urged that the judgment is against a firm of three persons, and that the injunction bill is filed by two of such persons individually who are the complainants in the bill. To grant the appellants' contention would place a peculiar construction on the statute. If the firm had obtained the injunction, the statute would afford security—yet two members of the firm can obtain it, and offer a defence to its judgment and seek a perpetual injunction—and no protection is offered by the statute. Under the decisions this judgment against the firm was a good and conclusive cause of action against the individual members of the firm.—*Cox v. Harris,* 48 Ala. 538; *Bank v. Winslow,* 30 Fed. Rep. 488; 2 Bates on Partnership, § 1066; 1 Freeman on Judgments, § 233; 2 Freeman on Judgments, §§ 432, 435.

Even if the appellants had been entire strangers to the judgment—not connected by partnership or otherwise with it—the case would still be within the statute, and the bond given by them would have the force and effect of a judgment. This identical question has been settled by this court in the case of *Wilburn v. McCalley,* 63 Ala. 436; *McCalley v. Wilburn,* 77 Ala. 549.

Sureties on bonds to stay proceedings at law "become *quasi* parties to the proceedings and subject themselves to the jurisdiction of the court, so that summary judgments may be rendered on their bonds.—*Blossom v. Railroad,* 1 Wall. 656; *Gordon v. Nat. Bank,* 56 Fed. Rep. 790.

In brief, the case before the court is a suit by a surety for contribution against his two co-sureties, one of whom is also bound as principal. The following authorities are relied on as clearly showing he is entitled to the relief prayed for.—*Jenkins v. Lockard,* 66 Ala. 377; *Broughton v. Wimberly,* 65 Ala. 549; *Bragg v. Patterson,* 85 Ala. 233; 1 Brandt on Suretyship, § 293; 2 Brandt on Suretyship, §§ 308, 309, 311.

[Halsey, *et al.* v. Murray.]

HEAD, J.—This case grows out of certain litigation between John Thomas Eason, on the one side, and the firm of Baldridge, Murray & Halsey, and two members thereof, upon the other, one branch of which was decided by this court at a former term.—*Baldridge v. Eason*, 99 Ala. 516. After the affirmance by this court, in that case, of the decretal order dissolving the injunction, which had issued at the suit of W. F. Baldridge and C. H. Halsey, Eason caused proceedings to be taken for the collection of his claim which were based upon the theory that the obligors upon the injunction bond and upon the *supersedeas* bond—given to restore the injunction pending the appeal to this court—had become liable to him for the amount of the judgment he had recovered against the firm of Baldridge, Murray & Halsey ; and whether or not this view was correct is the main question to be determined upon this appeal, the correct solution of which will require the consideration of several subsidiary propositions.

The bill proceeds upon the idea that the injunction which issued against Eason and the sheriff of Madison county, upon the complaint of W. F. Baldridge and C. H. Halsey, was an injunction of a judgment, or, what is the same thing, an injunction "to stay proceedings after judgment," within the meaning of section 3522 of the Code, and that the main defendant in that suit, upon the dissolution of the writ, was entitled to summary process for the collection of his judgment against the firm of Baldridge, Murray & Halsey out of the principal and sureties upon each of said bonds—the original injunction bond and the bond given to restore the injunction pending the appeal.

1. We do not think this proposition can be successfully maintained. An examination of the prayer for the injunction and of the writ which actually issued shows that the only effect of the injunction was to restrain the sheriff from levying upon the individual property of the complainants, under an execution which had issued on a judgment against the firm, and which was leviable only upon firm property. The writ of injunction which was prayed and obtained did not prevent the enforcement of the judgment—did not stay authorized proceedings to collect it ; it did not even restrain a levy of the execution upon firm property, which was the

only levy the sheriff was authorized to make. Notwith-
standing the writ of injunction, Eason could have pro-
ceeded to collect his judgment out of the firm—the only
party against whom he had recovered any judgment—
and hence he was not entitled to a bond conditioned to
pay a judgment which had not been enjoined. The sec-
tions of the Code, relating to injunctions of judgments
and the bond required to be given in such cases, have
reference to such restraining writs as interfere with and
delay the collection of a judgment—to writs operating
such a stay of proceedings after judgment as is the
equivalent of an injunction of the judgment. This con-
struction of the nature and character of the prayer of
the injunction bill, and of the writ issued in accordance
therewith, is in entire harmony with, and the necessary
result of, our decision in *Baldridge v. Eason, supra.*
There, we pointed out, that, although the bill had been
prepared under a misapprehension of counsel, yet in
reality, it showed no more than a threatened trespass—
an abuse of process—which the chancery court had no
jurisdiction to redress. Hence the bill was declared to
be wanting in equity, and the injunction was dissolved.
The conclusion we announce is in harmony with our
own decisions, and those in other States, construing
similar statutes. In the early case of *Dunn v. Bank of
Mobile,* 2 Ala. 152, judgment had been obtained against
one Dunn, and levies made thereunder upon property
claimed to belong to his children. An injunction was
procured to restrain the sale. After holding that the
statute then in force, as to a dissolution of an injunction
having the force and effect of a judgment, applied only
to cases in which the judgment was enjoined, the court
said : "In the case before us, the judgment remained
in full force and the execution itself was only suspended
as against the property levied on. The bond then did
not operate as a judgment." In *Wiswell v. Munroe,* 4
Ala. 9, this language was used : "It results from
this, that the bond executed by Cullum and Munroe
not operating as a *supersedeas,* whatever may be its
effect as a bond at common law, cannot have the force
and effect of a judgment upon a dissolution of the in-
junction, as that effect is only given to such bonds as
*enjoin the judgment,* which was not the fact in this
case."

In *Bartlett v. Gayle*, 6 Ala. 305, an injunction was issued at the suit of a stranger to restrain the collection of an execution by the sale of certain property, which had been levied on. The court remarked in the opinion, "that no execution can be issued upon the bond, (1) because it does not enjoin the judgment but only proceedings thereon, as it respects the premises in controversy; (2) because the defendant at law is not the complainant in equity."

The Supreme Court of Arkansas, in *Stanley v. Bonham*, 12 S. W. Rep. (Ark.) 706, makes the proposition clear in the following extract: "As to the assessment of damages on dissolution of an injunction, the statute does not authorize an assessment except in cases where the proceedings have been stayed—that is when the enforcement of the judgment has been enjoined. An injunction preventing the sale of particular property does not prevent the execution of the judgment within the meaning of the statute."

And in *Hardin v. White*, (Iowa) 16 N. W. Rep. 580, it was held that where an action is brought to restrain the sale of a particular piece of property under an execution, issued on a judgment, and not to restrain the execution generally, the bond need not be double the amount of such judgment and conditioned for its payment, since the court was of opinion that the object of such action was not to stay proceedings upon a judgment.

2. Nor do we think it can avail the appellee, as his counsel argue, that the bill of Baldridge and Halsey against Eason, was filed under the supposition that the judgment upon which the execution issued, was collectible out of the individual members of the firm, and hence that it had to be avoided by showing a good defense against it, and a want of opportunity to make that defense, before the complainants would be entitled to restrain the collection of the execution out of their individual property. Bills and writs must be construed according to their true legal effect, and not according to what counsel may erroneously suppose to be their operation and meaning. Injunction bonds are intended to furnish suitable security for an injury resulting from improper resort to the extraordinary process of injunction, procured upon an *ex parte* application, and restraining in

[Halsey, *et al.* v. Murray.]

terms some act upon the part of the defendant; and the inquiry to be made in determining what the condition of the bond should be, is not so much what relief upon final hearing the complainant seeks by his bill, as what does the preliminary writ prevent the defendant from doing—what interference does it present to a course he might otherwise pursue. Looking at the prayer of the bill and the writ issued thereon, couched in the same language, we learn that, no matter what the complainants or their counsel supposed, no matter what relief they sought or expected ultimately to receive, the injunction produced no restraining influence upon any legitimate effort of Eason or the sheriff to collect the judgment from the firm of Baldridge, Murray & Halsey.— *Shorter v. Mims,* 18 Ala. 655. There was, therefore, no reason why security should be furnished to protect the main defendant—Eason—against injury, to result, as from a wrongful injunction of his judgment. The bond should have been conditioned according to section 3524 of the Code, which applies in all cases, other than those specially provided for by sections 3522 and 3523. There has been an amendment of these sections, the effect of which is that the bonds authorized by them shall be payable to the opposite party instead of to the register; but that amendment exerts no influence in this case.—Acts of 1888-89, p. 116.

3. There is still another reason why the injunction issued at the suit of Baldridge & Halsey did not come within section 3522 of the Code, and why the bond to be given was not required to be conditioned according to that section. This reason is mentioned in the extract above quoted from *Bartlett v. Gayle,* 6 Ala. 305, and grows out of the fact that complainants were not the parties against whom the judgment was rendered—were strangers to that judgment.

In *Barnard v. Davis,* 54 Ala. 565, where a judgment had been enjoined at the suit of a stranger, Judge STONE, referring to sections of the revised Code, corresponding with the sections of the Code of 1886 now under consideration, said that those sections were "intended and framed to meet the wants of *defendants in judgments* who seek to relieve themselves from the payment thereof by force of some defense of equitable cognizance." That this is the true interpretation of the sections of the Code,

relating to injunctions of judgments, will, we think, satisfactorily appear from an analysis of their provisions. There are five of these sections—3521, 3522, 3528, 3529 and 3531—which are *in pari materia* and must be construed with reference to each other. Taken together they furnish just and equitable rules of procedure, well adapted to the demands of complainants seeking relief against judgments at law, and at the same time affording adequate security to defendants (plaintiffs at law), for the payment of the judgment—the doing of equity—if the injunction, operating a stay of the collection of the judgment, be wrongfully obtained.

Under our dual system, there may be a defense to a demand not available in the law court, or a defendant may, without fault or neglect on his part, be deprived of an opportunity to present a defense, available there ; thus necessitating a resort to a court of equity to secure his rights. Until impeached and avoided, a judgment is conclusive as between the parties and their privies, that the defendant owes the plaintiff the sum adjudged, and, therefore, if a defendant should desire to invoke the aid of a court of equity to make further controversy, upon the merits of the case and in the meantime, to withhold payment of the judgment, it is but just that he should not be allowed to doubly vex his opponent at the same time, by continued litigation in the law court, or upon appeal therefrom, and that he should furnish security for the doing of equity—the payment of the judgment with interest, damages for delay, if it be a delay case, and costs—if it turn out, he has wrongfully sued out the writ. So it is, and no doubt for these reasons, the legislature has declared in section 3521 that "an injunction obtained by a defendant to a judgment at law, to stay proceedings thereon, operates as a release of errors as to such defendant ;" and in section 3522 has provided that the bond to be given, upon the procurement of an injunction to stay proceedings after judgment shall be "conditioned on the dissolution of such injunction to pay the amount of the judgment enjoined, with interest, and also such damages and costs as may be decreed against such party." The concluding clause of this section, relating to the payment of damages that may be decreed, must be interpreted in connection with section 3528, where it is enacted, that upon the dissolution

[Halsey, *et al.* v. Murray.]

of an injunction to stay proceedings in an action "the chancellor may decree six per centum damages on the amount of money for which such judgment was enjoined, if of opinion the injunction was obtained for delay." No reason can be perceived why the legislature should require security for the payment of a judgment, from a person out of whom it is not collectible, or provide a penalty for obtaining an injunction for delay, against a stranger to the judgment, whom delay would not benefit.

Those, against whom it is necessary to legislate to prevent resort to legal proceedings, for mere delay, are the parties who are liable for the debt, and from whom its collection would be otherwise coerced. Following the motives which inspired these sections, it may be remarked that if an injunction of a judgment be dissolved, prompt and summary proceedings should be allowed to force collection of a claim, twice subjected to judicial investigation, without necessitating further resort to the tardier remedy of an action upon the bond ; hence it is we find in section 3529 the declaration, which accords to the bond the force and affect of a judgment and authorizes execution thereon, "for the amount of the judgment which has been enjoined, interest and damages decreed ;" thus referring to the damages that may be decreed for delay, under section 3528—the only instance in which authority is conferred upon the chancery court in the injunction proceeding, to award damages upon the bond, damages being usually, indeed in all other cases, recoverable only in a separate action. Under our rules of chancery practice, an injunction is often dissolved, before final hearing, thus withdrawing the obstacle in the way of the collection of the judgment, whereas, after a full presentation of the case, it may appear that the injunction was properly obtained and hence should be made perpetual. Therefore, it is provided by section 3531 that when "an interlocutory decree is made, dissolving an injunction to stay proceedings on a judgment at law, the chancellor must require of the defendant a refunding bond, * * * * * conditioned to refund the money and interest he may collect on the judgment, if the same is on final hearing perpetually enjoined ;" and further provision is made for "a final decree on such bond against any or all the parties

thereto." Now, when a stranger to the judgment for any reason, seeks to enjoin its collection out of the defendant and its payment to the plaintiff, and a preliminary writ to that effect is dissolved, the judgment is not collected by the plaintiff in judgment—defendant in the chancery suit—out of the complaining stranger, but out of the defendant to the judgment, and, therefore, there could be no reason to require a bond, for the benefit of a complainant, to refund to him that which has not been collected or received from him. The refunding bond is for the protection of a complainant, who may show a good defense in equity to the judgment, and yet, against whom, on account of the interlocutory decree of dissolution, the judgment may have been wrongfully enforced. If, however, we read the statutes under review with the idea in mind that they are "intended and framed to meet the wants of defendants in judgment, who seek to relieve themselves from the payment thereof, by force of some defense of equitable cognizance," then a provision for a refunding bond for the benefit of such defendants, complaining in equity against the judgment, becomes a plain demand of justice and equity. This construction is supported by the decisions in other jurisdictions. Thus, in *Carlin v. Hudson*, 12 Texas, 202, it is said that "the statute authorizing the court to award damages for delay, on the dissolution of an injunction has reference to injunctions to restrain the collection of money obtained by the judgment debtor, or some one who is a party to the judgment." In *Moore v. Hallum*, 1 Lea (Tenn.) 511, the court, in affirming a decree dismissing an injunction bill, gave this opinion: "We think the chancellor also properly held that no judgment ought to be rendered against the complainant on the injunction bond for the debt, it not being the collection of his own debt enjoined, nor one for which he was in any way liable. We have so held in a somewhat similar case. The fact that the bond, under the *fiat* of the chancellor, was improperly required to be in double the amount of the debt, does not change the result."

The case of *Thomas v. Brashear*, 4 Mon. (Ky.) 65, holds that damages by statute on the dissolution of an injunction is given only where the defendant to the judgment is complainant and obtains the injunction, not where the order is obtained on the application of others.

Mr. High, in his work on Injunctions embodies this statement in the text : "Where a statute provided that no injunction should issue to ·stay proceedings at law after verdict, unless the person applying therefor should enter into a satisfactory bond to the plaintiff in the action at law, conditioned to pay the debt enjoined, with interest and damages, the statute was held to be limited to cases, where the defendant in the judgment sought to restrain its enforcement."—§ 1628.   The authority he cites—*Scarlett v. Hicks*, 13 Fla. 314—fully justifies the text as will appear from an extract from the opinion, wherein the court, after quoting the Florida statute, thus interprets it :  ·"The intention of the legislature here was to require at the hands of the defendant at law due security for a compliance with the result of the suit at law, before he could question it in a court of chancery.   Having failed in the suit at law, he must give security for a compliance therewith in case he fails to secure the aid of a court of equity.   The present case, while it may be within the letter, is not within the evil which the statute was enacted to remedy, or the intention of the makers.   Under these circumstances, the rules of construction require that it should not be extended to this case."   The facts were that the bill was brought by a creditor of an estate against the sheriff and another creditor, who, after suggestion of insolvency, had obtained judgment at law, and was proceeding thereunder to subject the assets of the estate to sale, whereby an undue preference would have been obtained.

We have analyzed the statutes and quoted freely from decisions shedding light upon them, because, after careful examination and due consideration, we have been forced to the conclusion, that one of the rulings made by the court, in *McCalley v. Wilburn*, 77 Ala. 549, cannot be sustained on principle or authority.   In that case, the heirs of Mrs. McCalley, under the supposition that a judgment rendered against "William J. McCalley, administrator of Martha Ann McCalley" was a judgment against said administrator in his official capacity, filed a bill to assail the judgment and prevent a sale of the lands of the estate under the execution issued thereon. They procured an injunction restraining the plaintiffs *"from further prosecuting their suit,"*—thus using language broad enough to prevent any effort at enforcing the

judgment—and. restraining the sheriff "from further proceeding upon said execution against said property in said bill described." Bond was given conditioned to pay the judgment enjoined with interest, and such damages. and costs as might be decreed. The bill having been dismissed, thereby dissolving the injunction, execution was issued against the obligors upon the bond, as a statutory obligation. A petition for a *supersedeas* was filed, which the circuit court dismissed. An appeal from the judgment of dismissal brought the case to this court, for a decision of the statutory character *vel non* of the bond. It was here held : · *First*, that the judgment complained of was simply a personal recovery against the individual, who was administrator of said estate,·the words following his name in the proceedings and judgment entry being considered merely as *descriptio personae;* from which it followed, as a necessary consequence that the complainants—heirs of Mrs. McCalley—were strangers to the judgment ; and it was held, *second*, that this fact did not prevent the bond from being a statutory obligation. The opinion upon the second point is very brief and cites no authorities: A bond is not statutory, nor summarily enforceable, unless it contains, in substance, the very conditions required by the statute for the particular case.—*Reynolds v. Cox*, 108 ·Ala. 276. The decision was, therefore, in effect, that if strangers to a judgment, under an erroneous impression that it is a liability against them or their property, enjoin its collection, the statute requires them to give security for its payment, and upon dissolution of the injunction to pay it, although there may be no difficulty whatever, if execution be issued against the defendant to the judgment, in collecting the full amount, principal and interest, out of the person liable therefor ; and although the plaintiff in the judgment may have, therefore, suffered. no other injury from the injunction, than the payment of attorney's fees for procuring the dissolution. We do not think the statute was designed to accomplish such a result. When· a stranger to a judgment enjoins its collection, he should give a bond, conditioned according to section 3524, "to pay all damages and costs which any person may sustain by the suing out of such injunction, if the same is dissolved." Under such a bond, if the defendant in judgment, while the

writ was in force, shall have become insolvent, so that
the judgment cannot be collected out of him, then the
judgment can be recovered against the obligors, as a
part of the damages sustained; but if, after dissolution,
the debt is easily collectible out of the party liable pri-
marily for its payment—the judgment debtor—then
the injunction has not caused the loss of the debt, and
the complainant ought not to be required to pay it.    An
exaction of payment from a complainant and his sure-
ties, under such circumstances, has every objectionable
feature which attends the enforcement of a penalty, pure
and simple.    Upon this line of reasoning, it was held in
*Hanley v. Wallace*, 3 B. Mon. (Ky.) 184, that where a
judgment is enjoined at the suit of a stranger to it, and
an injunction bond given by him to restrain the sale of
a particular article of property, *whatever may be the condi-
tion of the bond*—even though conditioned for the pay-
ment of the debt—it operates in equity, only as a secu-
rity to the obligee for the injury that may accrue, not
for the amount of the debt.

The bond given in *McCalley v. Wilburn, supra,* was not
the obligation the statute required and although it may
have been enforceable as a common law contract—
whether so or not, and if so, to what extent, we need not
inquire—it ought not to have been enforced by summary
process, and the *supersedeas* ought to have been granted.
The case is in conflict with *Bartlett v. Gayle,* 6 Ala. 305,
and *Barnard v. Davis,* 54 Ala. 565, and the decisions
from other States, reviewed in the opinion.    It is, there-
fore, overruled.

4.    Rule 87 of Chancery Practice prescribes that the
chancellor "shall, upon making final or interlocutory
decree, which has the effect of dissolving an injunction,
*   *   *   *   prescribe the *penalty* and *condition* of the
bond to be given by the appellant, should he thereafter
appeal from such decree."    In the order which the
chancellor made in the injunction case of Baldridge and
Halsey v. Eason, he fixed the amount, but not the *condi-
tion* as the rule required.    We may remark, that *superse-
deas* bonds, in such cases should be framed with reference
to the damages likely to ensue from the delay occasioned
by the appeal; security and indemnity being the prime
consideration.—*Hughes v. Hatchett,* 55 Ala. 539, 547.

Neither the rule nor any statute has declared what

the condition shall be, nor can we do so. This must be left to the sound discretion of the chancellor to be exercised in view of the circumstances surrounding each case. But whether the chancellor complies with the rule, and a bond be given accordingly, or whether, as here, no condition is prescribed, but a voluntary bond with condition is executed, as and for a *supersedeas* bond, there is no rule or statute giving *supersedeas* bonds, restoring injunctions, in any case, the force and effect of judgments, or authorizing execution to be summarily issued against the obligors thereon, upon an affirmance by this court, of the decree of dissolution. The register had no authority to certify the *supersedeas* bond to the clerk of the circuit court, and the clerk had no right to issue process against the persons who executed it. The writ which the sheriff threatened to levy upon the property of the complainant was without validity, and upon proper application would have been quashed or superseded by the circuit court, whose officer issued it.—*Shorter v. Mims*, 18 Ala. 655; *Hill v. McKenzie*, 39 Ala. 314; *Cobb v. Thompson*, 87 Ala. 381.

5. Neither did the original injunction bond have the force and effect of a judgment, according to the principles declared in this opinion; and, hence, the clerk did not certify truly when he furnished a certificate that Eason had recovered a judgment in the circuit court against the obligors upon said bonds. No lien was obtained upon the property of said obligors by the filing of that certificate, in the office of the probate judge, even if it be conceded—a question upon which we express no opinion—that the statute authorizing the registration of judgment and decrees applies to statutory or office judgments, arising out of a forfeiture of the bonds required by statute in judicial proceedings. The only effect of the filing of the certificate which also embraced the actual judgment against the partnership, was to create a lien upon firm property—if any existed in the county subject to execution—of Baldridge, Murray & Halsey. It results from what has preceded, that the chancellor's decree can not be sustained, upon the theory that the bonds were statutory, creating by force of the statute a liability against the obligors for the amount of Eason's judgment against the said firm.

6. Counsel for appellants have contented themselves

with discussing the statutory character *vel non* of the
bonds ; but it will be necessary to proceed a step further.
The writ of injunction was dissolved and the decree of
dissolution was here affirmed.   Whatever liability was
thereby fixed against the obligors, a surety might vol-
untarily pay without waiting to be coerced by process,
and such voluntary payment would not defeat his right
to reimbursement from the principal or contribution
from a co-surety.—*Stallworth v. Preslar*, 34 Ala. 505. Pay-
ment under an invalid execution is treated as voluntary.
*Jenkins v. Lockard*, 66 Ala. 377.   By such payment, the
surety only assumes the burden of showing that what he
paid was in fact recoverable upon the bond.—*Martin v.
Ellerbe*, 70 Ala. 326.   If the bonds were not good as
statutory liabilities, they may still be valid and binding
as common law obligations.   Assuming, therefore, for
the sake of the argument, that the payment of the
amount of Eason's judgment by Murray, upon an exe-
cution issued on the *supersedeas* bond, and the taking of
a transfer of the judment and said execution could be
treated as a satisfaction of the liability against the
obligors, upon *both* the injunction and *supersedeas* bonds,
entitling him to contribution from co-sureties upon either
of them, the question then arises, has Murray averred
or proven a state of facts, authorizing the conclusion that
Eason could have recovered the amount so paid, in an
action upon either of said bonds, as a common law obli-
gation?   Has he established that in paying the amount
of the judment against the firm of Baldridge, Murray
& Halsey, he simply avoided the costs of litigation, which
would necessarily have compelled him, as surety, to pay
the amount?   It is familiar learning that the liability of
a surety can not be extended beyond the terms of his
contract, and that in a proceeding upon the bond the
liability of the principal obligor can not be extended
beyond that of the surety.—*Vann v. Lunsford*, 91 Ala.
576 ; *Bein v. Heath*, 12 Howard 168.   This leads us to
an examination of the terms and conditions of the bonds,
averred in the bill to have been executed by the com-
plainant as the surety of Baldridge and Halsey. The two
are substantially identical in their language, and par-
ticular reference to one will suffice.   The injunction
bond recites that a circuit judge had granted an order,
directing the register "to issue a writ of injunction as

prayed for in the bill," filed by Halsey and Baldridge as complainants against John Thomas Eason, defendant, "upon complainants executing this bond;" and it is then conditioned to pay or cause to be paid, (1) "the amount of *the judgment herein enjoined* with interest," and (2) "such damages and costs as may be decreed against such party," if the same (meaning the injunction ordered to issue and which did issue upon the execution of the bond) is dissolved. The second clause of the condition is easily disposed of. It is not averred in the bill nor proven that any damages or costs were decreed against Baldridge and Halsey, in the injunction suit, or that any damages or costs, if any were so decreed, had been paid by the complainant, Murray. Hence he showed no right to re-imbursement or contribution on account of the second clause of the condition. Indeed, we may presume no damages were decreed within the meaning of the bond, since the case made by the bill against Eason was not one in which the chancery court was authorized to decree damages.—*Bein v. Heath*, 12 How. 168, *supra*. What effect can be given to the first clause of the condition? If the obligors upon the bond had agreed to become liable for the amount of the judgment, with interest, *which Eason had recovered against the firm of Baldridge, Murray & Halsey, described with particularity in the bill*—a condition which might be more onerous than that provided by the statute for the case—the question would arise whether the contract could be enforced, to the full extent of its terms, as held, in respect of a replevin bond, in *Shutter v. Kirkendall*, 100 Pa. St. 307; or whether it would, *in equity*, be treated as security for the actual damages sustained (necessitating averment and proof of those damages), as held in *Hanley v. Wallace*, 3 B. Mon. (Ky.), 184, above cited.. But we do not think the question is so presented. The condition is simply to pay the judgment "herein enjoined." What that judgment is, if in fact one be enjoined, can not be ascertained from the bond alone considered. That instrument refers to the *fiat* of the chancellor, the prayer of the bill, and the injunction which issued on the execution of the bond, to which resort must be had, and which, on account of such reference, must be read into the bond. Pursuing this course, it appears that the only injunction which issued, or was prayed, restrained

merely the levy of an execution upon the individual property of the complainants—that no judgment was "herein enjoined;" and when, for the purpose of calculating the liability, we look for the date, amount and other identifying particulars of the judgment, said to be "herein enjoined," we utterly fail to find them. The bond, therefore, in this respect, is inconsistent and contradictory. The first clause of the condition requires the obligors to pay something which does not exist; and a thing without existence is nothing. That portion of the condition must, therefore, be entirely rejected as meaningless.—*Post v. Doremus*, 60 N. Y. 371. We could not, without doing violence to the language and extending the liability of the obligors far beyond their undertaking, hold that the argreement to pay "the judgment herein enjoined," is in effect an agreement to pay a judgment, *which was not enjoined at all.* Murray voluntarily paid what could not have been coerced from him, and hence he can not compel re-imbursement or contribution from appellants. The conclusion, therefore, is, that appellee has failed to show himself entitled to the relief he procured. The 8th, 9th, 14th and 15th grounds of the demurrer were well taken and, upon those grounds, the demurrer ought to have been sustained.

Let the decree of the chancellor be reversed and the cause remanded to be disposed of according to the principles of this opinion, unless amendment of the bill be made so as to show that complainant is entitled to some relief.

The defendants in the preparation of their answer have unnecessarily encumbered the record by exhibiting therewith proceedings and pleadings in other cases between the parties, and have duplicated several documents shown by the bill. They have even caused the opinion of this court in *Baldridge v. Eason*, 99 Ala. 516, to be twice annexed to the answer. By this violation of the rule against prolixity, the transcript has been swollen far beyond what it ought to have been. The cost of transcribing this unnecessary and immaterial matter should be borne by the parties committing the fault. Let one-half of the cost of preparing the transcript be taxed against the appellants.

Reversed and remanded.