# Kidd, Exr'x *v.* Bates *et als.*

*Bill by Executrix for Injunction to Restrain her Co-executor from the Control of the Estate.*

1. *Injunction; when not dissolved on unsworn answer.*—An injunction will not be dissolved on the mere denials of an answer not sworn to; but where the complainant introduced affidavits to procure the injunction it gave the defendant the right to introduce them also, and if on motion to dissolve affidavits are

[Kidd, Exr'x, v. Bates *et al* ]

received and the allegations of the unsworn answer are proved, and the averments of the bill are disproved, a case for dissolution has been made out.

2. *Chancery will not interfere with the right of testator to choose his executor, except in extreme cases.*—Every man is accorded the right to choose whom he prefers to execute his will, except in so far as the statute has placed restrictions upon this right; and if the court of chancery has power to set aside the will and wish of the testator in this respect, only an extreme case will justify its exercise. Removal of an executor by the court of chancery can be justified only when actual fraud, or some of the distinct grounds of removal in the court of probate are shown to exist.

3. *Personal hostility of executrix to executor, no cause for injoining him.*—Where an executrix of a will seeks to injoin an executor to the same will from acting, on the ground that it is impossible for the two to co-operate in executing the trusts of the will, and all that is made to appear is her indisposition to co-operate on account of her personal hostility towards him, the injunction, if temporarily granted, will not be retained.

4. *Injunction properly dissolved; when.*—Where an executrix obtained an injunction restraining her co-executor from any management of the estate of the testator, on the ground that he had obtained a large amount of property from the testator by undue influence over him; and on the further ground, among others, that, since the death of the testator the executor had converted to his own use a portion of the assets of the estate; and it appeared on the trial of the motion made by him to dissolve the injunction, that the evidence offered by the parties was conflicting, but it was clearly shown that the defendant was a man of fine business qualifications who has borne a good character for integrity; and further that several of the legatees, defendants to the bill, had filed petitions to the chancellor representing that it would be to their interest and all other persons except the complainant and those occupying similar positions to her, that the defendant be retained as one of the executors and be allowed to participate in the management of the estate; and further it is not shown that the defendant is insolvent and unable to pay any claim of the estate that may be prosecuted against him, but it is shown that in qualifying as executor he entered into bond in a large sum separate from the complainant, the injunction was properly dissolved.

APPEAL from Elmore Chancery Court.
Heard before Hon. J. R. DOWDELL.
The facts are fully and clearly stated in the opinion.

GUNTER & GUNTER and J. M. CHILTON, for appellant.
1. Where an executor is notoriously unfit, has committed a devastavit, or has been guilty of any other act which would warrant his removal, equity will interpose, enjoin him from further acting, and in a proper case appoint a receiver.—*Taylor v. Allen,* 2 Atk. 213; *Utterson v. Mair,* 2 Ves. Jr. 97; *Gladdon v. Stoneman,* 1 Madd. 143; *Scott v. Becher,* 4 Price 347; *Ex parte Walker,* 25 Ala. 81; *Duval v. Marshall,* 30 Ark. 230; *Sheehan v. Kennelly,* 32 Ga. 145; *Hill v. Arnold,* 79 Ga. 367; *Flagler v. Blunt,* 32 N. J. Eq. 518; *Boyd v. Murray,* 3 Johns. Ch. 48; *Jenkins v. Jenkins,* 1 Paige Ch. 243; *Stith v. Jones,* 101 N. C. 360; *Haigood v. Wells,* 1 Hill Ch. 59; *Stairley v. Rabe,* 1 McMullan 22.
2. To warrant the dissolution of an injunction the answer of defendant must be sworn to.—*Griwn v. State Bank,* 17 Ala. 258; *Hart v. Clark,* 54 Ala. 490. And the fact that oath to the answer is waived does not alter the rule.—*Rainey v. Rainey,* 35 Ala. 282.
3. To warrant dissolution of injunction the answer must be responsive to the material allegations of the bill, and must deny the facts and not merely the inferences to be drawn from those facts.—*Miller v. Bates,* 35 Ala. 580; *Thompson v. Adams,* 2 Ind. 151; *Smith v. Loomis,* 5 N. J. Eq. 60; *Skinner v. White,* 17 Johns. 357. The answer in this case fails to meet this requirement.
4. The dissolution of the injunction was an abuse of discretion by the chancellor and consequently was error. *Bibb v. Shackelford,* 38 Ala. 611; *Chambers v. Ala. Iron Co.,* 67 Ala. 353; *Scholze v. Steiner,* 14 So. Rep. 552.
5. The injunction should not have been dissolved because the probate court would be justified in removing the executor.—*Mill v. Mills,* 29 Pac. Rep. 443; *Moody v. Moody,* 29 Ga. 519.

WATTS, TROY & CAFFEY and THOS. G. & CHAS. P. JONES, *contra.*—1. Every man has the right to determine whom he will have for his executor, and the court have

nothing to do with the control of his choice, except in so far as the statutes expressly places restrictions upon said right.—*Kidd v. Bates,* 23 So. Rep. 735; *Rande v. Carter,* 62 Ala. 102; *Berry v. Hamilton,* 12 B. Monroe 193; Schouler on Executors, § 32; *Langley v. Hawkes,* 5 Madd. 46.

2. Appellant cannot sue at all. The estate has been committed to two executors. Each is entitled to collect and receive the assets of the estate. If one of them is indebted to the estate he will be chargeable with the amount. He cannot discharge himself from liability by paying it to the other. If one cannot discharge himself by paying over to the other, how can it be held that one can sue the other?—*Edmunds v. Crenshaw,* 14 Pet. 166; *King v. Shackleford,* 6 Ala. 426.

3. If the bill is without equity the injunction should be dissolved, whether its allegations are admitted or denied by the answer.—3 Brick., p. 352, § 296; *Cox v. M. & G. R. R. Co.,* 44 Ala. 611; *Collier v. Falk,* 61 Ala. 105.

4. Where complainant obtains injunction upon affidavits, the defendant may also submit affidavits showing the falsity of the charges against him.—*Barnard v. Davis,* 54 Ala. 565.

HARALSON, J.—The bill was filed in Elmore chancery court, on the 25th March, 1898, by Louisa V. Kidd as an executrix of the last will of H. B. Tulane, against Louis A. Bates, an executor of said H. B. Tulane, and against the legatees and heirs of said deceased. The complainant and the defendant, Bates, it appears, having been named as such by the will of said Tulane, had been duly appointed and are the executrix and executor of the will of said testator. Each in qualifying entered into a separate bond in the sum of $400,000.

It also appears, that the complainant interposed objections to the issuance of letters testamentary to said Bates, on subsantially the same grounds that are here set up to enjoin him from acting as executor. Her objections to his appointment having been overruled by the probate court, on her appeal, the decree was here affirmed.—*Kidd v. Bates,* 23 So. Rep. 735.

43

The bill shows that the estate of said Tulane is worth from $150,000 to $200,000, and that of this amount, about $140,000 is in New York, deposited in the safety vaults of the Fifth Avenue Bank of that city, and that the remaining assets consisting of real and personal property are in Alabama, the personal property consisting of mortgages, notes and claims. Complainant avers further, that there is another large claim not included in this estimate, amounting to more than $100,000, which moneys and securities taken by him under circumstances is alleged to be due from said Bates to said estate, for which render him liable therefor. It is stated, however, that said Bates denies that this claim is well founded, and insists that he owes the estate nothing; but complainant adds, that being advised that the said claim is well founded, upon her appointment as executrix she filed her bill in the chancery court of Elmore county against said Bates for the establishment of the said claim, which suit is now pending in said chancery court.

She further states, that in consequence of her insistence upon the payment or acknowledgment of said claim, and in consequence of said Bates' undue influence over said testator, by which he received this large sum, it is impossible for them to act jointly and harmoniously in the management of said estate, as to matters about which there is no difference between them, and the said Bates has refused to make any agreement for joint harmonious action, in reference to the matters of the estate not in litigation, and is proceeding in New York, as she is informed and believes, to get possession of the estate there, upon the probate in that State of the will of testator, to the exclusion of complainant, and perhaps without bond.

She further avers that defendant claims that said sum of money for which she is suing him was a donation by the testator, but she avers that the same was procured from the testator by the undue influence of Bates, during testator's last sickness when he was incapable of transacting business, and this transaction renders said Bates unfit to serve as executor of said estate.

It is further shown, that prior to the probate of said will, the probate court appointed three special adminis-

trators of said estate, viz., L. A. Bates, M. N. Due and John A. Lancaster, who qualified and acted as such; that they have not settled their accounts or delivered the assets of said estate to their successors, and that complainant, in the bill she filed against said Bates to establish the said claim against him, exhibited it also against the other special administrators, for the settlement of their special administration.

The bill prayed the appointment of complainant or some suitable person as receiver or sole trustee for the custody and management of the assets of said estate including the prosecution of said suit for the collection of said claim against said Bates, and for an order prohibiting the said L. A. Bates from interfering or intermeddling with the assets of said estate wherever situated, whether in this State or New York.

The bill waived an answer under oath. On the 25th July, 1898, complainant amended her bill, by praying for an injunction against said Bates, restraining and enjoining him from further acting as executor, and on July 27th, 1898, she presented her bill, and the other bill she had filed against said Bates and the other special administrators of said Tulane, to the Hon. A. D. Sayre, judge of the city court of Montgomery, and asked for an injunction. She submitted, also, the *ex parte* affidavits of two witnesses in aid of her motion. The injunction was granted, upon complainant entering into the bond which was prescribed. This bond was executed, and the injunction was accordingly issued.

Notice was given by Bates of a motion to dissolve said injunction in vacation. Accordingly the parties appeared before the chancellor on the 17th October, 1898, and the cause was submitted on that motion. The defendant submitted on his answer filed in the cause on the 4th day of August, 1898; on transcripts of the Surrogate Court of New York of petitions filed by complainant and defendant for letters of administration on the estate of said Tulane in New York; and on the petitions of defendant, Elmore county, and of defendants Harriet Gunn and Charles Graham filed in said cause, and the affidavits of a large number of witnesses.

The complainant submitted on her bill as amended and the affidavits of a dozen or more witnesses.

The chancellor dissolved the injunction, and ordered that complainant, as executrix, and defendant, as executor, be furnished and provided each by the other with an inventory and memorandum of all the assets and evidences of debt belonging to said trust estate; that each of said executors should give to the other reasonable notice of the time and place of the making of such inventory or memorandum of assets and evidences of debts owing said estate, so that each might be present, whether in this State or New York, when such inventory is made out. It was further ordered that neither of said executors should, in the absence of the other, in any manner handle or interfere with any of the stocks, bonds, securities or evidences of debt belonging to said estate, now on deposit in any safety vault of any bank in the city of New York, or elsewhere, without the consent of the other executor, or without having given reasonable notice to the other executor of the time and place when said executor giving such notice, may intend to inspect or handle such securities, in order that such executor receiving such notice may have reasonable opportunity to be present, either in person or by duly authorized agent.

1. It is contended that the injunction should not have been dissolved because the answer was not sworn to. If the motion to dissolve had been based on the denials merely of the answer, the principle invoked would have application, but when it is remembered that complainant introduced affidavits to procure the injunction, which fact gave the defendant the right to introduce them also, and that both sides submitted their cause without objection to any evidence offered by the other, that principle disappears. While it may be true that an unsworn answer cannot be treated as evidence on a motion to dissolve an injunction on the answer, yet, if affidavits are received, and on the trial, the allegations of the answer are proved, and the averments of the bill on which the injunction rests are disproved, a case for its dissolution has been made out.—*Barnard v. Davis*, 54 Ala. 565.

2. The grounds upon which the injunction was sought in the first instance, and on which complainant would have it perpetuated are: 1. That it is impossible for complainant to administer the estate jointly with defendant. 2. That defendant, Bates, obtained from the testator a large amount of property by the exercise of undue influence over him. 3. That subsequent to the death of the testator, defendant committed a devastavit by converting to his own use a portion of the assets of the estate.

It must be borne in mind, as we approach the decision of this question, that every man is accorded the right to choose whom he prefers to execute his will, except in so far as the statute has placed restrictions upon this right. The testator knew the defendant, and had known him and had business relations with him a great number of years. He trusted him, and when he came to die, had it written in his will, that he should be one of his executors. The complainant seeks to set aside the will and wish of the testator in this respect, and by the aid of the court to have defendant enjoined from the administration of testator's estate, and herself left as sole executrix. If the court of chancery has this power, only an extreme case, certainly, will justify its exercise. As was said in *Randle v. Carter*, 62 Ala. 101, "The statutes have committed the power to remove executors or administrators to the court of probate granting the letters, and have carefully defined the causes of removal. The court of chancery can protect its suitors against the delinquency of executors or administrators, in nearly every possible case, without resorting to the extreme measure of removal, which can be justified only when actual fraud, or some of the distinct grounds of removal in the court of probate are shown to exist."

3. Coming to consider the grounds urged for the retention of the injunction, in the order above named, we have been unable to ascertain why it is impossible for complainant to co-operate with defendant in executing ing the trusts of said will, unless it grows out of her indisposition to do so, on account of her feelings of personal hostility towards him. He manifests no indisposition to act with her, and swears that he "has always been

ready and willing and is ready and willing now to unite with the said Louisa V. Kidd, in the administration of said estate, and in the reducing of the assets of said estate into possession, and of their distribution according to the terms of the will."

The bill avers in this connection, that the defendant is proceeding in the State of New York to get possession of the assets of the estate in that State, to have the will there probated to the exclusion of complainant as executrix. It is shown, however, by the transcripts from the Surrogate Court of New York, that defendant filed his petition in that court for letters of administration on the estate of testator in New York to himself and complainant jointly; and it is further shown by complainant's petition in that court introduced in evidence, that she was seeking letters of administration on said estate to be issued by said court to her alone.

4. The next charge is, that defendant obtained a large amount of property from testator by the exercise of undue influence over him. This charge has referance to sixty-four bonds of $1,000 each of the Tulane Hotel Company, to $20,000 he had, as is claimed, given to that company and to $10,000 he had loaned it and for which he held its note. The sixty-four bonds of said company, it it shown he gave to said company by an intrument in writing duly attested. These bonds it is urged specially by complainant, were procured to be donated to said company by Bates; that the testator was old, decrepid and near his end at the time they are alleged to have been donated. The paper referred to was executed on the 16th September, and testator died 10th October following, 1897. Bates denies the exercise of any undue influence over testator to procure this paper to be executed, and says it was testator's own voluntary act, of which statement there was corroborating evidence. He introduces much testimony apparently of the most reliable character to show that testator was at the time in the exercise of his mental faculties and was capable of disposing of his property. On the other hand, it is shown that Bates owns nearly all the stock in said hotel company, and the gift to the company was substatially a gift to him; that he had many business transactions

with the testator and had influence over him, and that he was with him at the time said paper was executed and had been for some time.

The complainant has filed her bill, now pending in the chancery court of Elmore, to charge the defendant with these bonds and with other moneys belonging to said estate. Defendant is shown by the affidavits of a number of witnesses to be a man of fine business qualifications, who has always borne a good character for integrity. The county of Elmore, a defendant in this cause, and a legatee for a large amount under the will, filed a petition to the chancellor representing that it would be to its interest, and all other persons except the complainant and those occupying similar positions to her, that defendant be retained as one of the executors and be allowed to participate in the management of said estate. Two other defendants, Harriett Gunn and Charles Graham, also filed their petition, representing that they have every confidence in the integrity of character of the said Bates and his eminent fitness to execute the provisions of said will, and praying that he be not enjoined. Moreover, it is not shown that defendant is insolvent and unable to pay any claim of said estate that may be successfully prosecuted against him, but it is shown that in qualifying as executor he entered into bond in the sum of $400,000, separate from the complainant.

As thus presented, we are of opinion that a case has not been made as to this branch of it, for the perpetuation of said injunction. In view of the pending litigation to charge defendant with these bonds and other moneys, we forbear an intimation as to the merits of that controversy, deciding no more than that, as those matters are presented to us in this record, complainant is not entitled to her injunction.

5. The other ground for injunction, that since the death of the testator, defendant has converted to his own use a portion of the assets of the estate, grows out of the fact that testator at the time of his death and before, had bonds and securities in a safety vault in New York, a part of which it is alleged, defendant took. The only evidence brought to light that he took them, is that he had the opportunity to do so, and this, even, the defend-

ant denies. No witness examined testified to how many bonds or securities the testator had in New York. The only evidence complainant has brought forward on this point is, that Bates is said to have stated at one time after testator's death, that the amount of testator's securities in New York was over $160,000, and afterwards he said, they amounted to only $132,000. All this might be true, and yet Bates may not have misappropriated anything. The first estimate may have been merely an opinion. He was speaking about the bonds of another person, and may have had an idea of what his uncle had, without knowing exactly. He gives a detailed account of the deposit of these bonds in the safety vault in New York. He testified that the bonds which were placed in the Fifth Avenue Bank were deposited so that he had no control over them, and could not obtain possession of them without an express order from Mr. Tulane. He denies that after the death of Tulane, and before he qualified as special administrator, he took possession of any of the securities of the said Tulane which were in New York of the value of $100,000 as charged, or in any other amount or value. He further states, that after he was appointed special administrator, he went to New York and in company with the agent of the insurance company which made his bond, he went to the vault of the Fifth Avenue Bank, and together they took an inventory of all the securities belonging to testator's estate which were in said vault, and also of the special deposit of coupon bonds. These securities were then delivered to the Fifth Avenue Bank and placed on deposit to the credit of himself, Lancaster and Due as special administrators, and the money in the bank was left there to the credit of said administrators. The money was not to be drawn except upon the joint check of all the special administrators, and the securities were not to be withdrawn except upon joint receipt or order of said administrators. The other special administrators, after this, came to New York and made an inventory of each and all the securities, bonds and money which had been deposited specially with the said Bank, belonging to the estate of said Tulane.

[Taber *et al* v. Royal Insurance Co. *et al.*]

With the assets in Alabama, it satisfactorily appears the defendant has had nothing to do, having left them to his special co-administrators to take charge of. This evidence is entirely insufficient to charge defendant with the taking and conversion of any of the money or securities of his testator.

After a careful consideration of the evidence, it appears the chancellor made a very proper rendering in the case, one that will protect the parties in · interest against the misappropriation or misapplication of any of the assets of said estate by the separate act of the executrix or executor.

Let the decree of the court below be affirmed.

Affirmed.